In the Interest of R.A.J.

SHANNON J., Petitioner and Appellee,

v.

R.A.J., Respondent and Appellant.

Civil No. 960288.

Supreme Court of North Dakota.

Oct. 22, 1996.

Timothy C. Wilhelm (argued), Assistant State's Attorney, Minot, for petitioner and appellee.

Thomas E. Merrick (argued), Jamestown, for respondent and appellant.

MESCHKE, Justice.

When a patient, who is dangerously and mentally ill, refuses the most effective long-term medicine, should a forced-medication order conditionally authorize more than one combination of medicines, depending on later refusals? To answer that question, R.A.J. appealed an order for forced medication. We modify and affirm it.

On August 19, 1996, his son petitioned in Ward County for involuntary hospitalization of R.A.J., a 62–year–old, retired farm laborer. The petition alleged R.A.J. was "paranoid, irrational, possibly borderline schizophrenic," and "likely to injure himself or other persons if allowed to remain at liberty." The verified petition described predi-

cate acts: "Drinks hard liquor, drives intoxicated, makes statements about shooting somebody, [and] points loaded rifle at another person." After a preliminary hearing, the trial court found probable cause to believe R.A.J. was mentally ill and required treatment, and ordered him civilly committed for not over 14 days to the State Hospital for evaluation.

At the Hospital, Dr. William Pryatel diagnosed R.A.J. with a longstanding bipolar disorder, a recent hypomanic episode, and alcohol abuse. Dr. Pryatel reported R.A.J. needed hospitalization for mental illness and chemical dependency. After a commitment hearing, delayed by agreement until August 28, 1996, the Stutsman County trial court did not conclude that R.A.J. was chemically dependent, but satisfactorily concluded he had a mental illness that substantially impaired him, and that he should be hospitalized and treated at the Hospital for up to 90 days. In a separate order, the trial court found R.A.J. had been offered and refused clinically appropriate medications needed for his illness; the prescribed medications were the least restrictive intervention for his treatment needs; and the benefits of the medications outweighed the known risks to R.A.J. The trial court authorized the Hospital to "medicate [R.A.J.] involuntarily with Haldol and Tegretol or Risperdal and Tegretol until November 26, 1996."

R.A.J. only appealed from the order for forced medication. Since he had changed his mind and agreed on August 26 to take Risperdal, R.A.J. contends he had not refused all medications so the medications ordered were unnecessary. The Hospital says the recommended regimen for R.A.J. begins with either of two "major" tranquilizers, Risperdal or Haldol, and continues with a long-term mood stabilizer, Tegretol, because they are both needed for effective treatment. The Hospital thus urges, when the uncontradicted expert testimony prescribes a combination of medicines and the patient only consents to one, the patient has effectively refused necessary treatment.

For an order authorizing forced medication, a trial court must find, by clear and convincing evidence, that:

(1) ... the proposed prescribed medication is clinically appropriate and necessary to effectively treat the patient and there is a reasonable expectation that if the person is not treated as proposed there exists a serious risk of harm to that person, other persons, or property;

(2) ... the patient was offered that treatment and refused it or ... the patient lacks the capacity to make or communicate a responsible decision about that treatment;

(3) ... prescribed medication is the least restrictive form of intervention necessary to meet the treatment needs of the patient; and

(4) ... the benefits of the treatment outweigh the known risks to the patient.

NDCC 25–03.1–18.1(1)(a). The court must consider all relevant evidence presented, including:

(1) The danger the patient presents to self or others;

(2) The patient's current condition;

(3) The patient's past treatment history;

(4) The results of previous medication trials;

(5) The efficacy of current or past treatment modalities concerning the patient;

(6) The patient's prognosis; and

(7) The effect of the patient's mental condition on the patient's capacity to consent.

NDCC 25–03.1–18.1(2)(a). Also, NDCC 25–03.1–18.1(2)(b) directs medication may not be imposed solely for punishment or for the convenience of the hospital's staff. Moreover, under NDCC 25–03.1–18.1(3), an order for forced medication cannot go beyond ninety days.

As in involuntary hospitalization cases, a trial court's findings by clear and convincing evidence that the patient needs appropriately prescribed medication and refuses it are findings of fact. *In Interest of J.S.*, 528 N.W.2d 367, 368 (N.D.1995); *In Interest of R.N.*, 513 N.W.2d 370, 371 (N.D. 1994). As these cases also instruct, we review these findings under a more probing clearly-erroneous standard.

R.A.J. needs treatment for a Bipolar II Disorder that can cause significant impairment in social, occupational, or other important areas of functioning. According to Dr. Pryatel, R.A.J. is in a major depressive hypomanic state with hyperactivity, agitation, irritability, grandiosity, paranoid delusions, sleeplessness, rambling speech, and pressured speech, all seen by Hospital staff. According to R.A.J.'s wife, between previous hypomanic episodes in 1981, 1985, and 1989, R.A.J. had functioned well though after 1989 was more depressed. The doctor analogized R.A.J.'s condition to a diabetic, who must take insulin to keep his disease in check without a cure. Once in remission after a course of medication, R.A.J. would likely be released on outpatient treatment.

Dr. Pryatel testified that R.A.J. had responded well to Tegretol in the past, but this time R.A.J. had refused at first to take either it or any major tranquilizer. On August 16, Dr. Pryatel and Dr. Kottke had offered R.A.J. a major tranquilizer, either Risperdal, an oral form, or Haldol, an injectable form, to be given together with Tegretol. Dr. Pryatel expected to take R.A.J. off the major tranquilizer within weeks when the appropriate blood level was achieved for the slower acting mood stabilizer, Tegretol. While he acknowledged some other physicians might prescribe a different major tranquilizer, like Prolixin, or a different mood stabilizer, like Depakote or Lithium, Dr. Pryatel believed the prescribed combination of medications for R.A.J. was the only appropriate and the least restrictive treatment.

R.A.J., however, refused all medications until two days before his hearing, when he suddenly agreed to take Risperdal. Dr. Pryatel was not sure why R.A.J. changed his mind, but believed another patient had recommended Risperdal to him. R.A.J. took an evening dose and another one the next morning before medication was suspended by staff under a policy that avoided medication for 24 hours before a court hearing. *See* NDCC 25–03.1–16. R.A.J. had not used Risperdal in the past, and was "really amazed" when he took it, since it "seemed to round out that high speed thing I was working on" and it brought "me down to that old business

sense." He had no problems with it, slept well for longer than he usually could, and was "absolutely" willing to continue on Risperdal. Dr. Pryatel did not "trust him to continue" voluntarily on the oral Risperdal, and wanted the alternate, major tranquilizer, Haldol, a long-acting injectable medicine.

R.A.J. insists that, since he was voluntarily taking one medicine, he had not refused medication. The Hospital argues that "treatment" is a "broad term covering all steps taken to effect a cure of an injury or disease; including examination and diagnosis as well as application of remedies." Because that meaning connotes "an integrated series of actions or medications designed to cure or alleviate the manifestations of a disease or disorder," the Hospital argues Dr. Pryatel's testimony shows the need for an integrated treatment plan that combines a major tranquilizer, either Haldol or Risperdal, to control the hypomanic behavior sooner, and a mood stabilizer, Tegretol, to achieve the long-term maintenance that can lead to remission.

■ When the uncontradicted expert testimony shows the only appropriate treatment combines two types of medication, and the patient consents to only one of them, the Hospital urges the patient has refused treatment. We agree. When several medications are needed, refusing one part is indeed a refusal. We affirm the trial court's finding that R.A.J. refused necessary medication.

Still, R.A.J. argues three forced medications are unnecessary. He particularly attacks Haldol because the long-term use of it can result in tardive dyskinesia, an adverse and nonreversible condition with abnormal involuntary movements of the tongue, jaw, trunk or extremities. According to this record, Haldol also carries short-term side effects like stiffness, restlessness, tenseness of muscles, and drowsiness. The doctor acknowledged Haldol had caused R.A.J. physical problems before. R.A.J. testified that he rejected Haldol because it is a "vicious drug" that "makes people want to slide along the floor."

For those reasons, Dr. Pryatel preferred to use Risperdal, a recent, "second generation," major tranquilizer. Like Haldol, it is

quick acting and effective in controlling manic behavior. According to the doctor, Risperdal should help R.A.J. not be as psychotic, delusioned, or paranoid, and it "probably has a much less chance of causing tardive dyskinesia" or the motor side effects of Haldol. Dr. Pryatel thus believed Risperdal was the most appropriate medication for R.A.J. and that, if R.A.J. used it long enough, his insight would improve, and "[m]aybe he would see the wisdom of taking a mood stabilizer over the long term." However, Risperdal is only available in oral form, and Dr. Pryatel felt its use "problematic" when there is a pattern of refusals. He asked for approval of injectable Haldol as a backup in case R.A.J. later refused Risperdal.

R.A.J. has refused Tegretol. It is not a major tranquilizer, according to Dr. Pryatel, but a mood stabilizer that could be used to treat R.A.J. for years, if necessary. Although Tegretol has some side effects, it does not cause tardive dyskinesia. It is given orally and is very slow acting. It builds up gradually in the blood and needs to be maintained at the right blood level, necessitating periodic lab work for proper maintenance.

R.A.J. had used Tegretol before and believed he had problems with it, testifying that, when he used it, he "only wanted to sit around the house" and had "no energy whatsoever." R.A.J. argues that, since he was voluntarily being treated with Risperdal, an appropriate medication, the administration of another medication should not have been ordered, and that the least restrictive form of medication would be a trial period on the single drug.

■ R.A.J. has a right to be free of unnecessary medication. NDCC 25–03.1–40(10). The findings required by the forced medication statute are "designed to safeguard a patient's right to be free of forced medication unless the prescribed medication is necessary to effectively treat the patient, unless the medication is the least restrictive form of intervention available for the patient's treatment, and unless the benefits of the medication outweigh its known risks to the patient." *State v. Nording*, 485 N.W.2d 781, 787 (N.D.1992). R.A.J. argues that injec-

tions of Haldol and bloodwork for Tegretol would be unnecessarily intrusive. However, we held in *In Interest of B.D.*, 510 N.W.2d 629, 633 (N.D.1994), "the statute calls for the 'least restrictive form of intervention', not the least intrusive form of intervention."

> While the involuntary injection of psychotropic medication may be more intrusive to the individual than treatments not involving injections, the testimony [here] clearly and convincingly establishes that no other form of treatment will meet the treatment needs of [this patient]. When the decision is whether to medicate [this patient] by forced injections, which may lead to his release from the hospital in [a shorter time], or to have [the patient] continue to deteriorate and remain hospitalized indefinitely because he refuses to take medication, we conclude that forced medication is the least restrictive form of treatment for [this patient's] needs.

*Id.* Likewise, in this case, the trial court found that the combined medications of either Haldol and Tegretol, or Risperdal and Tegretol, were "clinically appropriate and necessary to effectively treat [R.A.J.]; the patient was offered such treatment and refused it; the prescribed medication is the least restrictive form of intervention necessary to meet the treatment needs of [R.A.J.]; and the benefits of the treatment outweigh the known risks to the patient."

■ Bearing in mind the potential differences in the length of hospitalizing R.A.J. for treatment, the relative brevity of 90–days forced medication, and the need for judicial economy, we believe it is sensible to authorize more than one combination of medicines, depending on later refusals. We conclude the evidence convincingly supports the findings, and we are not convinced a mistake has been made.

■ The trial court must specify the prescribed medication, at least by generic name, in an order for forced medication. *J.S.*, 528 N.W.2d at 369; *B.D.*, 510 N.W.2d at 634. The trial court did so here, ordering that the Hospital "may medicate [R.A.J.] involuntarily with Haldol and Tegretol or Risperdal and Tegretol," and directing that "[t]hese medi-

cations [are] to be given at the least restrictive dosages necessary to meet treatment needs of [R.A.J.]." Still, this record shows, although the order did not say so, that the least restrictive combination of medications for R.A.J. is oral Risperdal and Tegretol, and that the combination of injectable Haldol and Tegretol is to be given only if R.A.J. should change his mind and refuse Risperdal. Accordingly, we direct modification of the order to authorize the combination of Haldol with Tegretol only if R.A.J. should refuse Risperdal while it is prescribed. As NDCC 25–03.1–13(1) ("Every respondent . . . is entitled to legal counsel"), and 25–03.1–43, including subsection (3), imply, the court should also condition the alternative combination of medications upon at least 24 hours prior notice to the patient, his most recent attorney, and the court that issued the forced medication order.

So modified, we affirm the forced medication order.

VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ., concur.