2002 ND 85

**Darold B. SHIEK, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,**

and

**North Dakota State University, Respondent.**

**No. 20010319.**

Supreme Court of North Dakota.

May 14, 2002.

Rehearing Denied June 5, 2002.

Mark G. Schneider (submitted on brief), Schneider, Schneider & Phillips, Fargo, for claimant and appellant.

Jacqueline Sue Anderson (submitted on brief), Special Assistant Attorney General, Fargo, for appellee.

MARING, Justice.

[¶ 1] Darold Shiek appeals from the district court's judgment affirming a North Dakota Workers' Compensation Bureau decision which determined Shiek was not entitled to higher permanent partial impairment benefits than he had already received. We reverse the Bureau's decision and remand for appropriate action in accordance with this opinion.

I

[¶ 2] On July 30, 1991, Darold Shiek injured his right shoulder while working as a boiler operator at North Dakota State University. Shiek filed a claim with the North Dakota Workers' Compensation Bureau ("Bureau") and received compensation for the injury. On August 4, 1992, Shiek underwent arthroscopic surgery on his left knee to repair a tear of the posterior horn of the medial meniscus. On August 25, 1992, Shiek filed a separate claim for the injury to his left knee in which he explained that the knee injury occurred at the same time that he injured his right shoulder on July 30, 1991. The Bureau consolidated the claim for the left-knee injury with the original claim for the right-shoulder injury. On October 3, 1994, Shiek underwent a total arthroplasty of his left knee upon the advice of an orthopedic surgeon.

[¶ 3] On April 3, 1996, the Bureau issued an Order Awarding Permanent Partial Impairment Benefits related to Shiek's work injury of July 30, 1991. In its order, the Bureau found that Shiek had sustained the following impairments: 15.5% right

arm at the shoulder; 25% additional for master hand; and 50% left leg at hip for knee. The order awarded Shiek $20,845.44 in benefits in accordance with former North Dakota Century Code sections 65–05–14 and 65–05–13(1)(18) (1989).

[¶ 4] Shiek requested reconsideration of this order, contending that he was entitled to a higher award for his left leg and that he was entitled to an award for venous insufficiency. These matters were consolidated for an administrative hearing. Additionally, the hearing was intended to address the issue of whether an order of the Bureau dated March 26, 1998, properly denied Shiek benefits for a condition that had developed in his right knee.

[¶ 5] On December 23, 1999, the hearing officer issued an order which recommended that the Bureau's Order Denying Specific Benefits dated March 26, 1998, be reversed because Shiek's right knee condition was work-related. The order also recommended that the Bureau's Order Awarding Permanent Partial Impairment Benefits be reversed to reflect Shiek's entitlement to additional permanent partial impairment benefits for his left-leg condition and for his venous insufficiency condition. The Bureau adopted the recommendation as its final order on December 28, 1999.

[¶ 6] On January 4, 2000, the Bureau issued an Order Awarding Permanent Partial Impairment Benefits. In the order, the Bureau found that Shiek had sustained the following impairments: 15.5% right arm at shoulder; 25% additional for master hand; 54% left leg at hip for knee; 10% whole body for venous insufficiency. After subtracting the prior benefits awarded to Shiek in the order dated April 3, 1996, the Bureau concluded Shiek was entitled to $7,479.36 in additional benefits in accordance with former North Dakota Century Code sections 65–05–12, 65–05–14, and 65–05–13(1)(18) (1989).

[¶ 7] On January 28, 2000, an evaluation of Shiek's right knee was conducted. Subsequent to this evaluation, the Bureau denied Shiek additional permanent partial impairment benefits for his right knee. However, the Bureau reversed this decision after receiving a memorandum from the Office of Independent Review. On June 1, 2000, the Bureau issued an Order Awarding Permanent Partial Impairment Benefits relating to Shiek's right knee as follows: "20% Whole body for right knee gait derangement 20.0 weeks." As a result of the order, Shiek received an additional award of $2,920.

[¶ 8] On June 1, 2000, Shiek requested reconsideration of the Bureau's order dated June 1, 2000. Shiek argued that he was entitled to an evaluation and award for venous insufficiency of his right knee. Shiek also argued that under the current version of N.D.C.C. § 65–05–12.2, his prior partial impairment awards should have been converted into whole-body impairment terms and taken into account when determining the extent of his whole-body impairment that existed after his right knee evaluation.

[¶ 9] The Bureau's counsel and Shiek's counsel reached an agreement regarding Shiek's first argument. In accordance with the agreement, Shiek was awarded 20 weeks for venous insufficiency for his right knee and received an additional $2,920 in benefits. In regard to Shiek's second argument, the hearing officer concluded that "there is nothing within the language of Section 65–05–12.2(7) or (10) which requires the conversion of all prior impairments to a 'whole body' basis before awarding benefits for a member or body part not previously the subject of an impairment award." The Bureau adopted the hearing officer's decision in an order dated July 2, 2001, and Shiek appealed to the district court. The district court af-

firmed the Bureau's order, and Shiek appealed to this Court.

## II

[¶ 10] On appeal, we review the Bureau's decision and not the decision of the district court. *See Klein v. N.D. Workers Comp. Bureau*, 2001 ND 170, ¶ 6, 634 N.W.2d 530. We are required to affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law, or its decision violates the claimant's constitutional rights or deprives the claimant of a fair hearing. *See id.* (citing N.D.C.C. §§ 28–32–19, 28–32–21).[1] In reviewing the Bureau's findings of fact, we determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence. *See id.* Questions of law, including whether the Bureau correctly interpreted a statute, are fully reviewable on appeal from a Bureau decision. *See id.* (citing *Robertson v. N.D. Workers Comp. Bureau*, 2000 ND 167, ¶ 8, 616 N.W.2d 844).

## III

[¶ 11] Shiek argues that the Bureau incorrectly calculated his permanent partial impairment benefits for his right-knee impairment because under N.D.C.C. § 65–05–12.2, the Bureau was required to convert Shiek's prior impairment ratings to whole-body impairment ratings and then combine them with the whole-body impairment rating he received for his right knee to arrive at a current cumulative whole-body impairment rating.

[¶ 12] Our primary goal in statutory construction is to ascertain the intent of the Legislature. *See Western Gas Resources, Inc. v. Heitkamp*, 489 N.W.2d 869, 872 (N.D.1992). In ascertaining the Legislature's intent, we first look to the plain language of the statute and give each word of the statute its ordinary meaning. *See Estate of Thompson*, 1998 ND 226, ¶ 7, 586 N.W.2d 847. We construe the statute as a whole and give effect to each of its provisions if possible. *Id.* If the language of the statute is clear and unambiguous when read as a whole, we cannot ignore that language under the pretext of pursuing its spirit because the legislative intent is presumed clear from the face of the statute. *See Zueger v. N.D. Workers Comp. Bureau*, 1998 ND 175, ¶ 9, 584 N.W.2d 530. If, however, the statute is ambiguous or if adherence to the strict letter of the statute would lead to an absurd or ludicrous result, a court may resort to extrinsic aids, such as legislative history, to interpret the statute. *See Shiek v. N.D. Workers Comp. Bureau*, 2001 ND 166, ¶ 17, 634 N.W.2d 493. A statute is ambiguous if it is susceptible to meanings that are different, but rational. *See id.* (citing *Jorgenson v. Agway, Inc.*, 2001 ND 104, ¶ 5, 627 N.W.2d 391).

[¶ 13] The permanent impairment evaluation for Shiek's right knee was performed on January 28, 2000. Thus, the applicable statute in this case is the 1999 version of N.D.C.C. § 65–05–12.2. *Compare* 1999 N.D. Sess. Laws ch. 551, § 4 (stating that the 1999 version of N.D.C.C. § 65–05–12.2 applies to all evaluations performed after July 31, 1999) *with* N.D. Sess. Laws ch. 580, § 2 (stating that the 2001 version of N.D.C.C. § 65–05–12.2 applies to all evaluations performed after

---

1. We note N.D.C.C. § 28–32–46 adds additional grounds for not affirming an administrative agency decision, effective August 1, 2001. Shiek filed his appeal from the Bureau's decision on July 19, 2001. Therefore, former N.D.C.C. § 29–32–19 applies.

July 31, 2001). Unless otherwise noted, all references to N.D.C.C. § 65–05–12.2 in this opinion refer to the 1999 version of the statute.

[¶ 14] Section 65–05–12.2(10), N.D.C.C., provides, "If the injury causes permanent impairment, the award must be determined based on the percentage of whole body impairment ...." The amount of a permanent partial impairment award is determined by multiplying "thirty-three and one-third percent of the average weekly wage in this state on the date of the impairment evaluation, rounded to the next highest dollar, by the number of weeks" listed in N.D.C.C. § 65–05–12.2(10) that corresponds to the claimant's percentage of whole-body impairment. *See* N.D.C.C. § 65–05–12.2(2). The governing procedure for conducting a permanent impairment evaluation is set forth in N.D.C.C. § 65–05–12.2(6). Section 65–05–12.2(6), N.D.C.C., provides:

> A doctor evaluating permanent impairment shall include a clinical report in sufficient detail to support the percentage ratings assigned. The bureau shall adopt administrative rules governing the evaluation of permanent impairment. These rules must incorporate principles and practices of the American medical association's "Guides to the Evaluation of Permanent Impairment" modified to be consistent with North Dakota law, to resolve issues of practice and interpretation, and to address areas not sufficiently covered by the guides. Until rules adopted under this subsection become effective, impairments must be evaluated under the fourth edition, third printing, of the guides.

The Bureau has not adopted any administrative rules that would modify the application of the Guides to the Evaluation of Permanent Impairment in this case. *See* N.D. Admin. Code § 92–01–02–25. Thus, under N.D.C.C. § 65–05–12.2(6), the Bu-

reau was required to determine the percentage of Shiek's whole-body impairment in accordance with the Guides to the Evaluation of Permanent Impairment.

[¶ 15] Under the "Rules for Evaluations" contained in the American Medical Association's Guides to the Evaluation of Permanent Impairment, if an impairing condition involves several organ systems, "each organ system impairment should be expressed as a whole-person impairment; then the whole-person impairments should be combined by means of the Combined Values Chart (p. 322)." *See* American Medical Association, *Guides to the Evaluation of Permanent Impairment,* 8 (4th ed. June 1993) ("AMA Guides"). Similarly, if a physician determines that a patient has two significant, unrelated conditions, the physician may calculate a whole-person impairment estimate for each condition. *See id.* "The whole-person impairment estimates for the two separate conditions then would be combined into an overall impairment estimate using the Combined Values Chart." *Id.* Thus, the AMA Guides contemplate the combination of work-related impairments to determine a single whole-body impairment rating, regardless of whether the impairments are to different body parts. Furthermore, as illustrated in *Saari v. North Dakota Workers Compensation Bureau,* the Bureau has previously relied on the AMA Guides to convert impairments to different body parts to whole-body impairment percentages and to combine those impairment percentages into a single whole-body impairment rating for a claimant. *See* 1999 ND 144, ¶ 4, 598 N.W.2d 174.

[¶ 16] In *Saari,* the claimant was examined under the Fourth Edition of the AMA Guides. *See id.* The doctor conducting the evaluation determined the claimant had sustained a 5 percent whole-body impairment for a cervical injury, a 22

percent impairment of his upper extremity for abnormal motion, and a 0.7 percent impairment of the upper extremity for sensory loss. *See id.* The Bureau then determined that the upper extremity impairments were equal to a 13.7 percent whole-body impairment rating. *See id.; see also AMA Guides,* at 20 (stating that a 22 percent upper extremity impairment equals a 13 percent whole person impairment). It then combined the 5 percent whole-body impairment rating for the cervical impairment with the 13.7 percent whole-body impairment rating for the upper extremity impairment to arrive at a single whole-body impairment for the claimant of 17.7 percent. *See id.; see also AMA Guides,* at 322 (listing the combined value of 5 percent and 13 percent as 17 percent).

[¶ 17] In this case, it is undisputed that all of Shiek's impairments were caused by the compensable injuries Shiek suffered while working as a boiler operator on July 31, 1991. Therefore, if all of Shiek's impairments had been determined at the permanent impairment evaluation conducted on January 28, 2000, the Bureau would have been required to convert each of the impairments to different body parts to whole-body impairment ratings and combine each of the whole-body impairment ratings to arrive at a single whole-body impairment rating. *See Saari,* 1999 ND 144, ¶ 4, 598 N.W.2d 174; *AMA Guides,* at 8. Unlike the claimant in *Saari,* however, Shiek's impairments were not all determined at the same permanent impairment evaluation, but were determined at two different permanent impairment evaluations. Furthermore, the permanent partial impairment awards given to Shiek as a result of the first evaluation were based on the schedule of injuries to separate body parts found in former N.D.C.C. § 65–05–13 (1989), while the impairment award given to Shiek as a result of his second evaluation was based on the whole-body impair-

ment schedule found in N.D.C.C. § 65–05–12.2(10). Therefore, we must determine whether the Bureau is relieved of its obligation under subsections 6 and 10 of N.D.C.C. § 65–05–12.2 to combine all of a claimant's impairments to different body parts into a single whole-body impairment rating when the impairments, although caused by work-related injuries from the same accident, are determined at two different permanent impairment evaluations and result in awards based on two different permanent impairment award systems.

[¶ 18] Nothing in the AMA Guides nor the Bureau's own regulations, indicates that prior impairments to scheduled members cannot be converted to whole-body impairment ratings and combined with a subsequent whole-body impairment to arrive at a single whole-body impairment rating. In fact, the AMA Guides contain numerous charts for converting impairments to specific body parts to whole-body impairments and a Combined Values Chart for combining the whole-body impairments to the different body parts into a single whole-body impairment percentage. *See AMA Guides,* at 20, 77–78, 218, 322. Furthermore, the Bureau does not argue that it cannot convert a prior scheduled impairment to a whole-body impairment and concedes that if Shiek's subsequent impairment award was for his left knee, it would have been required to convert his prior scheduled impairment for his left leg to a whole-body impairment percentage. However, the Bureau argues that, under N.D.C.C. § 65–05–12.2(7), it is not required to convert Shiek's prior impairments to whole-body impairments in this case because Shiek's subsequent impairment award for his right knee was for a body part for which he had never previously received an impairment award.

[¶ 19] In *Feist v. North Dakota Workers Compensation Bureau,* this Court re-

jected an argument similar to the argument advanced by the Bureau in this case as being inconsistent with the AMA Guides:

> In its 1993 permanent partial impairment award, the Bureau calculated Feist's impairment rating by combining his lumbar impairment rating with a previous cervical rating. Feist contends "there is nothing in the Guides (any edition) which would allow the Bureau to combine the ratings and awards for two separate claims pertaining to two separate anatomical impairments." We disagree. The Third Edition and the Third Edition (Revised) each contain a "Combined Values Chart" bearing a legend stating in part:
>
> > "To combine any two impairment values, locate the larger of the values on the side of the chart and read along that row until you come to the column indicated by the smaller value at the bottom of the chart. At the intersection of the row and the column is the combined value.["]
> >
> > . . . .
> >
> > "If three or more impairment values are to be combined, select any two and find their combined value as above. Then use that value and the third value to locate the combined value of all. This process can be repeated indefinitely, the final value in each instance being the combination of all the previous values."
>
> The legends on the combined values charts do not indicate that "two separate anatomical impairments" may not be combined. The combined values charts allow any two or more impairment values to be combined. That impairments of separate anatomical areas of the body may be combined in one impairment value is made even more clear in the combined values chart in the Fourth Edition, which, in addition to the same language as that in the Third and

Third (Revised) editions, contains the following sentence: "Note: If the impairments from two or more organ systems are to be combined to express a whole-person impairment, each must first be expressed as a whole-person impairment percent." We conclude the Bureau was authorized to combine the impairment ratings for Feist's lumbar and cervical impairments.

> As Feist noted in his brief, when the Bureau awarded Feist the permanent impairment award challenged here, N.D.C.C. 65–05–12 provided in part: "Any subsequent award for impairment must be made minus any previous award given on any earlier claim or the same claim for that same member or body part." *That provision on awards for impairments does not undercut in any way the Bureau's ability to combine impairment ratings.*

1997 ND 177, ¶¶ 14–15, 569 N.W.2d 1 (emphasis added).

[¶ 20] Similar to former N.D.C.C. § 65–05–12 (1989), section 65–05–12.2(7), N.D.C.C., provides: "The bureau shall deduct, on a whole body impairment basis, from an award for impairment under this section, any previous impairment award for that same member or body part under the workers' compensation laws of any jurisdiction." Just as nothing in former N.D.C.C. § 65–05–12 (1989) prevented the Bureau from combining a prior and a subsequent impairment rating for two separate body parts, *see Feist*, 1997 ND 177, ¶¶ 14–15, 569 N.W.2d 1, nothing in N.D.C.C. § 65–05–12.2(7) prevents the Bureau from combining Shiek's prior impairments with his subsequent impairment to arrive at a combined whole-body impairment percentage. Section 65–05–12.2(7), N.D.C.C., requires the deduction of a previous permanent impairment "award" from a new permanent impairment "award," not

the deduction of a previous permanent partial impairment percentage from a new permanent partial impairment percentage. Therefore, before a previous impairment award can be deducted under N.D.C.C. § 65–05–12.2(7), the amount of the claimant's new award must be determined. As explained earlier, under subsections 6 and 10 of N.D.C.C. § 65–05–12.2, the amount of a whole-body permanent impairment award must be based on the combined value of all the claimant's whole-body permanent impairments, even if the impairments are to different body parts. *See Saari*, 1999 ND 144, ¶ 4, 598 N.W.2d 174; *AMA Guides*, at 8. Nothing in the Bureau's own administrative regulations or the AMA Guides indicates that whole-body permanent impairment awards should not be based on the combined value of all the claimant's impairments simply because the permanent impairment percentages for the different body parts are determined at two different permanent impairment evaluations. *See* N.D. Admin. Code § 92–01–02–25; *AMA Guides*, at 8.

[¶ 21] In addition to being inconsistent with the AMA Guides, the Bureau's interpretation of N.D.C.C. § 65–05–12.2(7) is also contrary to the Legislature's intent in switching from a scheduled injury impair-ment system to a whole-body impairment system.[2] When the Legislature switched to a whole-body impairment system in 1995, its intent was to increase the amount of benefits for the most severely impaired workers, but decrease the amount of benefits for less severely impaired workers and eliminate benefits for workers whose whole-body impairments fell below 16 percent. *See Saari*, 1999 ND 144, ¶ 8, 598 N.W.2d 174. However, as illustrated by the following two examples, under the interpretation of N.D.C.C. § 65–05–12.2(7) advanced by the Bureau in this case, some of the most severely impaired workers would never receive the full amount of permanent partial impairment benefits to which they are entitled simply because their impairments happened to develop at different times and did not affect the same body part.

[¶ 22] In the first example, assume the Bureau determines, through four different permanent impairment evaluations each made at different times, that a claimant has a left-leg impairment of 15 percent whole-body, a right-leg impairment of 15 percent whole-body, a left-arm impairment of 15 percent whole body, and a right-arm impairment of 15 percent whole-body, all

2. The dissent asserts at ¶ 36 that the "legislative intent regarding successive awards to the same claimant was expressed when the Legislative Assembly amended N.D.C.C. § 65–05–12.2(7) in 1999, and required setoff of past awards against current awards for the 'same member or body part.' " This assertion is incorrect. The phrase "same member or body part" was part of N.D.C.C. § 65–05–12 of the former permanent impairment award system that was based on scheduled injuries to specific body parts. *See* N.D.C.C. § 65–05–12 (1989) ("Any subsequent award for impairment must be made minus any previous award given on any earlier claim or the same claim for that same member or body part."). The phrase "same member or body part" was carried over into N.D.C.C. § 65–05–12.2(7) when the Legislature switched from a sched-uled injury impairment system to a whole-body impairment system in 1995. *See* N.D.C.C. § 65–05–12.2(7) (1995) ("The bureau shall deduct, from a subsequent award for impairment, any previous award given or calculated on an earlier claim or the same claim for that same member or body part."). In 1999, the Legislature amended N.D.C.C. § 65–05–12.2(7) to provide that the deduction of previous permanent impairment awards shall be made "on a whole body impairment basis." N.D.C.C. § 65–05–12.2(7) (1999) ("The bureau shall deduct, on a whole body impairment basis, from an award for impairment under this section, any previous impairment award for that same member or body part under the workers' compensation laws of any jurisdiction.").

caused by compensable injuries. Under the interpretation of N.D.C.C. § 65–05–12.2(7) advanced by the Bureau in this case, none of these impairments would be combined because they arose at different times and were to different body parts. Therefore, each of these impairments would be viewed separately and this claimant would never receive an award for the work-related impairments, *see* N.D.C.C. § 65–05–12.2(10) (providing for an award of zero weeks for an impairment of one to fifteen percent), despite the fact that the claimant suffers from a combined whole-body impairment of 48 percent, *see AMA Guides,* at 322 (Combined Values Chart). Under N.D.C.C. § 65–05–12.2(10), a claimant with a 48 percent whole-body impairment rating is entitled to an award of 230 weeks.

[¶ 23] In the second example, assume the Bureau first determines that a claimant has a right-leg impairment of 30 percent whole-body and later determines, through a subsequent evaluation, that the claimant has a left-leg impairment of 30 percent whole-body. Under the Bureau's interpretation of N.D.C.C. § 65–05–12.2(7), because these impairments were determined at different permanent impairment evaluations and were to different body parts, the Bureau would not be required to combine them. Therefore, this claimant would receive 50 weeks for each impairment, for a total award of 100 weeks for both impairments. *See* N.D.C.C. § 65–05–12.2(10). Under the AMA Guides Combined Values Chart, however, the claimant actually suffers from a combined whole-body impairment of 51 percent. *See AMA Guides,* at 322 (Combined Values Chart). A claimant with a 51 percent whole-body impairment is entitled to receive a total award of 280 weeks. *See* N.D.C.C. § 65–05–12.2(10).

[¶ 24] Rather than adopt a construction of N.D.C.C. § 65–05–12.2(7) that is both inconsistent with the AMA Guides and contrary to the Legislature's intent in switching to a whole-body impairment system, we conclude that N.D.C.C. § 65–05–12.2, when read as a whole, requires that the overall number of weeks a worker receives for all the worker's prior and subsequent impairments must be the number of weeks that corresponds to the combined value of both the prior and subsequent impairments on a whole-body impairment basis. Therefore, when a claimant who has received a prior permanent impairment award is later determined to have a subsequent permanent impairment, the Bureau must first, in accordance with subsections 6 and 10 of N.D.C.C. § 65–05–12.2, determine the whole-body impairment for each condition and then combine the claimant's prior and subsequent impairment percentages into a single combined whole-body impairment percentage, regardless of whether the prior and subsequent awards were for impairments to different body parts. *See Saari,* 1999 ND 144, ¶ 4, 598 N.W.2d 174; *AMA Guides,* at 8. Next, the Bureau must determine the number of weeks that correlates to this percentage under N.D.C.C. § 65–05–12.2(10). The Bureau must then "deduct, on a whole body impairment basis, from an award for impairment under this section, any previous impairment award for that same member or body part under the workers' compensation laws of any jurisdiction," *see* N.D.C.C. § 65–05–12.2(7), to determine the number of additional weeks that must be awarded to the claimant for the subsequent impairment.

[¶ 25] When a compensable injury results in a claimant receiving a previous impairment award and a subsequent impairment award that are both based on whole-body impairment percentages, deducting the prior award from the subsequent award under N.D.C.C. § 65–05–

12.2(7) will generally involve simply subtracting the number of weeks that were actually awarded for the prior whole-body impairment. By way of example, assume a worker is determined to have a 16 percent whole-body impairment for her right leg and a 17 percent whole-body impairment for her left arm, for a combined whole-body impairment rating of 30 percent. *See AMA Guides,* at 322 (Combined Values Chart). Under N.D.C.C. § 65–05–12.2(10), therefore, the worker would be awarded 50 weeks. If the worker is subsequently determined to have an 18 percent whole-body impairment for her left leg, the 18 percent impairment would be combined with the prior whole-body impairments for a single combined whole-body impairment rating of 43 percent. *See AMA Guides,* at 322 (Combined Values Chart). Under N.D.C.C. § 65–05–12.2(10), a 43 percent whole-body impairment corresponds to an award of 180 weeks. From this 180 weeks, the Bureau must "deduct, on a whole body impairment basis, from an award for impairment under this section, any previous impairment award for that same member or body part under the workers' compensation laws of any jurisdiction." *See* N.D.C.C. § 65–05–12.2(7). The "member or body part" at issue in this example is the worker's whole body because her subsequent award was based not on an impairment to any particular body part, but on the combined value of all her impairments to her whole body. The previous permanent impairment award this worker received for all the impairments to her whole body was 50 weeks. Therefore, under N.D.C.C. § 65–05–12.2(7), 50 weeks would be deducted from 180 weeks, and the worker would be awarded an additional 130 weeks.

[¶ 26] When, as in this case, compensable injuries result in a claimant receiving a prior impairment award based on injuries to scheduled body parts, and a subsequent award based on a whole-body impairment

percentage, the same process is employed. By way of illustration only, if on remand the Bureau finds that Shiek's combined whole-body impairment rating after his right knee evaluation is 56 percent as Shiek contends, the total number of weeks Shiek would be entitled to receive is 380. *See* N.D.C.C. § 65–05–12.2(10). From this 380 weeks, the Bureau must "deduct, on a whole body impairment basis, from an award for impairment under this section, any previous impairment award for that same member or body part under the workers' compensation laws of any jurisdiction." *See* N.D.C.C. § 65–05–12.2(7). As in the previous example, the "member or body part" at issue would be Shiek's whole body because his subsequent award would not be based on an impairment to any particular body part, but on the combined value of his prior and subsequent impairments. The awards Shiek has already received for the impairments included in his combined whole-body impairment rating are awards of 244.80 weeks for his prior impairments and 40 weeks for the right-leg impairment at issue in this case. Thus, Shiek has already been awarded 284.80 weeks for his whole-body impairment. Therefore, if Shiek's combined whole-body impairment percentage is 56 percent as Shiek contends, then 284.80 weeks would be deducted from 380 weeks, and Shiek would be awarded an additional 95.2 weeks.

[¶ 27] Shiek argues that once the Bureau determines the number of weeks that corresponds to his combined whole-body impairment percentage, it should not deduct the number of weeks he actually received for all his prior impairments, but the number of weeks listed in N.D.C.C. § 65–05–12.2(10) which corresponds to his combined whole-body impairment percentage as it existed prior to his right-leg evaluation, along with the 40 weeks Shiek

already received for his right-leg impairment. According to Shiek's calculations, his whole-body impairment rating prior to his right-leg evaluation was 37.38 percent and his combined whole-body impairment rating after the right-leg evaluation would be 56 percent. Shiek contends that 37.38 percent corresponds to 123.8 weeks under N.D.C.C. § 65–05–12.2(10) and 56 percent corresponds to 380 weeks. Thus, Shiek concludes that his additional award is equal to 380 weeks minus 163.8 weeks, or 216.2 weeks.

[¶ 28] We do not agree with Shiek's interpretation of N.D.C.C. § 65–05–12.2(7). As discussed earlier, N.D.C.C. § 65–05–12.2(7) requires the deduction of a previous permanent impairment "award" from a new permanent impairment "award." Therefore, the amount of the deduction under N.D.C.C. § 65–05–12.2(7) is not determined by the amount of the previous impairment percentage, but by the actual amount of the previous award. The total award Shiek previously received for all his impairments was 284.80 weeks, not 163.8 weeks. To deduct 163.8 weeks from 380 weeks would result in Shiek receiving an additional award of 216.2 weeks and a total award for both his prior and subsequent impairments of 501 weeks (216.2 + 284.80=501). Thus, if Shiek's prior impairment awards were deducted in the manner he suggests, he would end up receiving 121 more weeks than the total number of weeks that corresponds to the combined value of all his impairments (501–380=121). As discussed earlier, when read as a whole, N.D.C.C. § 65–05–12.2 prohibits such a result by requiring that the total permanent impairment award given to workers with both prior and subsequent impairments must correspond to the combined value of all the prior and subsequent impairments on a whole-body impairment basis.

## IV

[¶ 29] We reverse the decision of the district court and remand to the Bureau for further proceedings consistent with this opinion. On remand, the Bureau is to determine a single combined whole-body impairment percentage for all of Shiek's impairments and the number of weeks that corresponds to this percentage under N.D.C.C. § 65–05–12.2(10). The Bureau is to then deduct the 244.80 weeks and the 40 weeks that were previously awarded to Shiek. The result will be the additional number of weeks to which Shiek is entitled under N.D.C.C. § 65–05–12.2(10).

[¶ 30] VANDE WALLE, C.J., and NEUMANN, JJ., concur.

KAPSNER, Justice, dissenting.

[¶ 31] I respectfully dissent.

[¶ 32] The opinion of the majority reaches a result that would be logical if the legislature had required it. However, it reaches this result only by the most strained interpretation of the statute. N.D.C.C. § 65–05–12.2(7) (1999), requires:

> The bureau shall deduct, on a whole body impairment basis, from an award for impairment under this section, any previous impairment award for that same member or body part under the workers' compensation laws of any jurisdiction.

The majority's result depends upon its interpretation that this section does not prohibit the result it imposes and uses that lack of prohibition to create a mandate. The majority also strains the language of the statute when it holds that the language "that same member or body part" actually means the whole body. It is a strain the plain language of the statute simply won't support.

[¶ 33] The above quoted subsection (7) is the subsection which directly addresses

combining prior awards with a present award. It does not pertain to Shiek's right knee award and does not require converting prior awards for other body parts to be combined with the award to the right knee.

[¶ 34] Neither subsection (6) nor subsection (10) of N.D.C.C. § 65–05–12.2 relied upon by the majority directly relate to combining prior awards with later awards. Subsection (10) does require "[i]f the injury causes permanent impairment, the award must be determined based on the percentage of whole body impairment in accordance with [the statutory schedule] . . . ."

[¶ 35] Shiek's right knee injury was evaluated as a whole body impairment. Shiek does not challenge the analysis in isolation but challenges the failure of the Bureau to analyze all prior permanent impairment awards in combination with the right knee injury. However, no statute requires this result and subsection (7) is inconsistent with such an approach.

[¶ 36] Although the majority purports to be relying on the legislative intent in switching to a whole body impairment system in 1995, majority at ¶ 21, legislative intent regarding successive awards to the same claimant was expressed when the Legislative Assembly amended N.D.C.C. § 65–05–12.2(7) in 1999, and required set-off of past awards against current awards for the "same member or body part."

[¶ 37] I believe the Bureau and the trial court were correct. N.D.C.C. § 65–05–12.2 does not require the Bureau to convert past awards to whole body impairment basis when the past awards are not for the same body part. The conclusions of the ALJ, which were adopted by the Bureau, provide:

> In accordance with Section 65–05–12.2[7], N.D.C.C., the plain and ordinary language of the statute requires the Bureau to deduct "any previous impairment award" only "for the same member

or body part under the workers compensation laws of any jurisdiction." *Id.* The greater weight of the evidence has established that Shiek had received no previous PPI award for his *right* knee. Therefore, Section 65–05–12.2[7] is not applicable to Shiek's award of permanent partial impairment benefits for his *right* knee. There is nothing within the language of Section 65–05–12.2[7] or [10] that requires the conversion of all prior impairments to a "whole body" basis before awarding benefits for a member or body part not previously the subject of an impairment award.

> . . . .

> This hearing officer concludes, as a matter of law, that Section 65–05–12.2[7] is not applicable to Shiek's award of permanent partial impairment benefits for his *right* knee and that there is nothing within the language of Section 65–05–12.2[7] or [10] which requires the conversion of all prior impairments to a "whole body" basis before awarding benefits for a member or body part not previously the subject of an impairment award. As such, it is the conclusion of the undersigned that the Bureau's Amended Order Awarding Permanent Partial Impairment Benefits dated January 22, 2001, should be affirmed.

[¶ 38] The district court affirmed, noting that Shiek's interpretation of the statute, which is partially adopted by the majority opinion, was not rational and the interpretation was not supportable by the language of the statute.

> Shiek's interpretation would require the Bureau to add in every old injury for every single person who qualified for a PPI award based on a new injury. If the legislature had intended such a scheme, it should have written an explicit statute setting out that process. The simple phrase "on a whole body impairment basis" is not sufficient to create

the complicated process Shiek advocates. Shiek's interpretation is not rational; therefore this statute is not ambiguous. *Western Gas Resources, Inc.,* 489 N.W.2d at 872 (stating that a statute is ambiguous if it is susceptible to different rational interpretations).

[¶ 39] Because I believe the Bureau and the trial court have correctly interpreted the statute, I would affirm the decision of the district court. Therefore, I dissent.

[¶ 40] SANDSTROM, J., concurs.

MARING, Justice, on petition for rehearing.

[¶ 41] The Bureau filed a petition for rehearing, arguing the AMA Guides do not permit the conversion and combination of some of Shieks prior permanent impairments with his subsequent permanent impairment. The arguments raised by the Bureau in its petition for rehearing address issues concerning the process of applying the AMA Guides to Shiek's permanent impairments in order to determine Shiek's combined whole-body impairment rating. Such issues are to be determined by the Bureau on remand.

[¶ 42] In its petition for rehearing, the Bureau also pointed out a mathematical error in one of the prior orders of the Bureau awarding Shiek permanent impairment benefits. If the Bureau's order is incorrect, the Bureau should correct its order on remand. The petition for rehearing is denied.

[¶ 43] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, J., concur.

[¶ 44] We would grant the petition for rehearing.

CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.