2002 ND 174

**Gary MELJIE, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee.**

No. 20020158.

Supreme Court of North Dakota.

Nov. 5, 2002.

63

Steven L. Latham, Wheeler Wolf, N.D., for claimant and appellant.

Shawnda Renee Reid, Special Assistant Attorney General, Bismarck, N.D., for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Gary Meljie appealed from a district court judgment upholding an order of the North Dakota Workers Compensation Bureau establishing Meljie's average weekly wage and awarding disability benefits. We hold the Bureau's computation of Meljie's disability benefits is in accordance with the law, and we affirm.

I

[¶ 2] Meljie injured his back and left foot on April 19, 1996 while employed with Gowan Rain Gutter, performing roof and siding applications. Meljie filed a claim for worker's compensation benefits. The Bureau ultimately accepted the claim and established Meljie's average weekly wage as $138 for calculating his disability benefits. Meljie appealed to the district court, claiming the Bureau did not calculate his benefits in accordance with the law. The district court entered an order upholding the Bureau's benefit determination and this appeal followed.

II

[¶ 3] On appeal, we review the Bureau's decision. *Shiek v. N.D. Workers Comp. Bureau*, 2002 ND 85, ¶ 10, 643 N.W.2d 721. We are required to affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law, or its decision violates the claimant's constitutional rights or deprives the claimant of a fair hearing. *Paul v. N.D. Workers Comp. Bureau*, 2002 ND 96, ¶ 6, 644 N.W.2d 884; N.D.C.C. §§ 28–32–46 and 28–32–49. In determining whether the agency's findings of fact are supported by a preponderance of the evidence, we exercise restraint and do not make independent findings or substitute our judgment for that of the Bureau, but determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Bruns v. N.D. Workers Comp. Bureau*, 1999 ND 116, ¶ 7, 595 N.W.2d 298.

A. Wage Computation

[¶ 4] Meljie asserts the Bureau improperly established his average weekly wage, for purposes of determining his benefits, under N.D.C.C. § 65–01–02(5)[1], which provides:

> 5. "Average weekly wage" means the weekly wages the employee was receiving from all employments at the

1. Meljie does not dispute the Bureau's use of the 1997 version of the worker's compensation statutes in this case.

date of first disability. The average weekly wage as determined under this section must be rounded to the nearest dollar. In cases where the employee's wages are not fixed by the week, they must be determined by using the first applicable formula from the schedule below:

a. For seasonal employment, one-fiftieth of the total wages from all occupations during the twelve months preceding the injury or during the tax year preceding the injury, or during the three tax years preceding the injury, whichever is highest and for which accurate, reliable, and complete records are readily available.

b. The "average weekly wage" of a self-employed employee is determined by the following formula: net profits based on preceding tax year or preceding fifty-two weeks whichever is higher if accurate, reliable, and complete records for those fifty-two weeks are readily available, plus depreciation, meal and travel expenses, and any expenses chargeable to use of personal residence as allowed under the federal tax laws.

c. Hourly or daily rate multiplied by number of hours or days worked per seven-day week.

d. Monthly rate multiplied by twelve months and divided by fifty-two weeks.

e. Biweekly rate divided by two.

f. The usual wage paid other employees engaged in similar occupations.

g. A wage reasonably and fairly approximating the weekly wage lost by the claimant during the period of disability.

[¶ 5]  To calculate Meljie's benefits under this statute, the Bureau applied subsection 5(a) for seasonal employment and,

using Meljie's total wages in 1997 of $6,875.75, divided those wages by one-fiftieth, resulting in an average weekly wage (rounded to the nearest dollar) of $138.

[¶ 6]  The claimant has the burden to prove the right to receive benefits from the worker's compensation fund. *Blanchard v. N.D. Workers Comp. Bureau*, 1997 ND 118, ¶ 23, 565 N.W.2d 485. Meljie provided the Bureau with very poor financial records of his earnings history, and he does not specifically object to the Bureau's use of his 1997 wages for computing his benefits, rather than using another year or combination of years of earnings history. However, Meljie claims the record does not support a finding that he is a seasonal worker, and he claims the Bureau, instead of computing his average weekly wage under subsection 5(a), should have used subsection 5(f), which is the usual wage paid other employees engaged in similar occupations or, alternatively, 5(g), which is a wage reasonably and fairly approximating the weekly wage lost by the claimant during the period of disability.

[¶ 7]  Under the statute, seasonal employment "includes an occupation that has periods of forty-five consecutive days of not receiving wages." N.D.C.C. § 65–01–02(29). At the January 15, 1998 hearing, Meljie testified that for a living he does "[j]ust whatever I can. Mostly siding and roofing and carpentry." He testified he has worked for numerous companies and "[i]t's seasonal work, usually." He also testified that he usually did "spring to winter type of work." When asked if he was "off in the wintertime," Meljie responded, "[m]ostly." The hearing officer found that Meljie's work history "is that of a temporary, piecemeal, worker more akin to a seasonal employee." Consequently, the Bureau concluded it was appropriate to determine Meljie's average weekly wage

under subsection 5(a) for seasonal employment.

[¶ 8] We conclude it was proper for the Bureau, based upon Meljie's testimony, to infer that Meljie was engaged in seasonal employment, as defined under the statute. From Meljie's testimony, the Bureau could have inferred Meljie worked in occupations having "periods of forty-five consecutive days" wherein Meljie did not receive wages. That inference can be gleaned from Meljie's own testimony that he engaged in "seasonal work," that he was "mostly" off in the wintertime, and that his work for Gowan Rain Gutter was "more or less part time ... it was just piece work and we would agree on a price." Consequently, we conclude the Bureau's implicit finding that Meljie was a seasonal worker is supported by a preponderance of the evidence. We, therefore, further conclude it was appropriate for the Bureau to use subsection 5(a) in calculating Meljie's benefit entitlement.

[¶ 9] We also, however, agree with the district court that, assuming Meljie was not engaged in seasonal employment, the Bureau's computation of Meljie's average weekly wage was appropriate under the statute. Meljie claims the Bureau should have used subsection 5(f) to determine his average weekly wage by using the wage paid other employees engaged in similar occupations. However, the evidence shows that Meljie's work history was sporadic and involved individual piece-work jobs in siding, roofing, carpentry, and repair work, making it difficult, if not impossible, for the Bureau to ascertain a "usual wage" paid by other employees engaged in "similar occupations." Meljie asserts, as an alternative, the Bureau should have computed his average weekly wage

under subsection 5(g), using a wage reasonably and fairly approximating the weekly wage lost by Meljie due to his disability. The district court concluded that the Bureau's computation of Meljie's weekly wage, using one-fiftieth of Meljie's actual total wages in 1997, the year of Meljie's highest wages of the earnings history Meljie provided to the Bureau, constituted a wage "reasonably and fairly approximating" Meljie's lost wages from his disability.

[¶ 10] Under the circumstances, and with the sparse earnings data provided to the Bureau by Meljie, we conclude the Bureau's calculation of Meljie's average weekly wage under 5(a) resulted in a wage under 5(g) reasonably and fairly approximately Meljie's weekly lost wages from his disability. Having reviewed the evidence, we further conclude the Bureau's findings are supported by a preponderance of the evidence and the Bureau's calculation of Meljie's average weekly wage under N.D.C.C. § 65–01–02(5) is supported by its findings and is in accordance with the statute.

## B. Minimum Benefit

[¶ 11] Alternatively, Meljie asserts the Bureau erred in refusing to pay him a minimum disability benefit under N.D.C.C. § 65–05–09 equal to sixty percent of the average weekly wage in the state. The statute [2] provides, in relevant part:

> If an injury causes temporary total or permanent total disability, *the fund shall pay to the disabled employee during that disability a weekly benefit equal to sixty-six and two-thirds percent of the gross weekly wage of the employee, subject to a minimum of sixty percent and*

---

**2.** Here too, the Bureau has applied, without objection by Meljie, the 1997 version of the statute.

*a maximum of one hundred percent of the average weekly wage in the state.* If an employee is disabled due to an injury, that employee's benefits will be based upon the employee's wage and the bureau benefit rates in effect on the date of first disability.

. . . .

2. *The disability benefit* or the combined disability benefit and dependency award *may not exceed the weekly wage of the employee after deductions for social security and federal income tax.*

[Emphasis added.]

[¶ 12] Meljie asserts that under this statute he is entitled to a benefit of at least sixty percent of the average weekly wage in the state, irrespective of the weekly wage he was receiving prior to his injury. He asserts the maximum benefit limitation under subsection 2, of one-hundred percent of the employee's net weekly wage, only applies when a claimant receives both a disability benefit and a dependency award. We disagree.

[¶ 13] The interpretation of a statute is a question of law fully reviewable by this Court. *Svedberg v. N.D. Workers Comp. Bureau,* 1999 ND 181, ¶ 8, 599 N.W.2d 323. The primary objective of statutory construction is to ascertain the intent of the legislature. *Ash v. Traynor,* 2000 ND 75, ¶ 6, 609 N.W.2d 96. In ascertaining legislative intent, we look first to the words used in the statute, giving them their ordinary, plain-language meaning. *Id.*

[¶ 14] Relevant to the issue in this case, we believe the statute is unambiguous. Under the clear language of the statute, the limitation under subsection 2 applies to a claimant receiving only a disability benefit and also applies to a claimant receiving both a disability benefit and a dependency award. The statute makes the benefit limitation under subsection 2 applicable to the disability benefit "or" to the combined disability benefit and dependency award, if the claimant receives both. The word "or" is defined as a function word "to indicate an alternative" and means "either" of alternative choices. Merriam–Webster Collegiate On Line Dictionary, www.m-w.com. We conclude, therefore, the maximum benefit limitation under subsection 2 applies to a claimant receiving only a disability benefit.

[¶ 15] We construe statutes as a whole to give each provision meaning and effect. *Little v. Traynor,* 1997 ND 128, ¶ 37, 565 N.W.2d 766. Statutes must be harmonized to give meaning to related provisions and are interpreted in context to give meaning and effect to every word, phrase, and sentence. *Doyle ex rel. Doyle v. Sprynczynatyk,* 2001 ND 8, ¶ 10, 621 N.W.2d 353. Harmonizing all parts of the statute together, it provides that the fund shall pay a disabled employee a weekly benefit equal to two-thirds of the employee's gross weekly wage, subject to a minimum of sixty-percent of the state's average weekly wage, but not to exceed one-hundred percent of the employee's preinjury net weekly wage, after deducting social security and federal income tax.

[¶ 16] The treatise, 5 *Larson's Workers' Compensation Law* § 93.04[5], at 93–75 (2002), notes that in applying a minimum benefit "there is also a proviso, something like 'employee's actual average wage if less.' If this proviso has been omitted, as it has in some states, the danger of benefits exceeding actual wage is obvious, particularly as to part-time employment and as to partial disability." Our legislature has enacted a proviso to avoid the danger of benefits exceeding actual wages. Thus, under the clear wording of the statute, Meljie is entitled to receive from the

fund a weekly benefit equal to two-thirds of his gross weekly wage. However, if that amount is less than sixty percent of the average weekly wage in the state, then Meljie is entitled to a larger benefit, but his benefit cannot exceed, under subsection 2, one-hundred percent of his preinjury net weekly wage, after deducting social security and federal income tax. The Bureau has completed the calculation. As determined under N.D.C.C. § 65–01–02(5), Meljie's average weekly wage is $138. Two-thirds of that wage is a gross weekly wage of $92. For the period used in the calculation, one-hundred percent of the average weekly wage in the state was $417 and sixty percent of the average weekly wage in the state was, therefore, $250. According to the Bureau, and apparently not disputed by Meljie, Meljie's net weekly wage, after deducting social security and federal income tax, is $122. Applying the statute to these figures, Meljie is entitled to a maximum benefit equal to one-hundred percent of his net weekly wage of $122 per week.

[¶ 17] When, as in this case, two-thirds of the claimant's weekly wage is less than sixty percent of the state weekly wage, the benefit is increased up to sixty percent of the state weekly wage, but not to exceed one-hundred percent of the claimant's preinjury average net weekly wage. This interpretation harmonizes the benefit provisions of the statute with the limitation provided under subsection 2 so that all parts of the statute are given meaning and effect. The objective accomplished by the clear and unambiguous wording of the statute is to provide the worker with a fair benefit, but not a windfall benefit. If two-thirds of the claimants' average weekly wage is less than sixty percent of the state's average weekly wage, the claimant will receive an increased benefit, but the claimant cannot receive more than one-hundred percent of his preinjury net weekly wage.

### III

[¶ 18] In accordance with this opinion, we conclude the Bureau's findings are supported by a preponderance of the evidence, the Bureau's conclusions are supported by its findings, and the Bureau's calculation of Meljie's benefit is in accordance with the law. We, therefore, affirm the judgment of the district court, upholding the Bureau's decision.

[¶ 19] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.