2007 ND 166

**Interest of T.E.**

**William PRYATEL, M.D., Petitioner and Appellee**

**v.**

**T.E., Respondent and Appellant.**

**No. 20070278.**

Supreme Court of North Dakota.

Oct. 16, 2007.

Kenneth L. Dalsted (argued), Special Assistant Attorney General, and Jodi A. Bass (on brief), third-year law student, under the Rule on Limited Practice of Law by Law Students, Jamestown, N.D., for petitioner and appellee.

Thomas E. Merrick, Jamestown, N.D., for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] T.E. appeals from a district court order allowing the North Dakota State Hospital to treat him involuntarily with medication until November 20, 2007. We reject T.E.'s argument that the district court's forced medication order should be reversed because a State Hospital patient cannot be subjected to more than one 90–day medication order under N.D.C.C. § 25–03.1–18.1(3). We further conclude the court's finding that T.E. refused medication, one of the prerequisites for issuance of a forced medication order under N.D.C.C. § 25–03.1–18.1(1)(a)(2), is not clearly erroneous. We affirm.

I

[¶ 2] T.E. is a 54–year–old male who was arrested for disorderly conduct in Fargo after becoming disruptive at a local driver's license office. He was incarcerated at the Cass County jail, but the jail staff members were unable to manage his paranoid and disoriented behavior, and the District Court of Cass County issued an order on May 11, 2007, admitting him to the North Dakota State Hospital for treatment until August 9, 2007. T.E. had been admitted to the State Hospital on seven previous occasions and has been diagnosed with schizophrenia and paranoid personality disorder. T.E. did not cooperate with treatment upon his admission to the State Hospital, and although he initially took medication provided for him, he eventually refused further medication.

[¶ 3] On June 1, 2007, the District Court of Cass County issued an order effective until August 9, 2007, to involuntarily treat T.E. with medication, authorizing use of Risperdal, Haloperidol, Chlorpromazine, and Olanzapine. On June 13, 2007, T.E. began receiving intramuscular injections of Olanzapine, which is an antipsychotic medication used to treat schizophrenia. T.E. has continually taken the medication either by injection or orally since the forced medication order was implemented. T.E. has made progress since receiving the medication. He has been transferred to an open ward, walks the hospital grounds unescorted, works in housekeeping, and participates in treatment activities. T.E. nevertheless continues to express his belief that he does not need medication or treatment.

[¶ 4] On July 20, 2007, Dr. William Pryatel, a State Hospital staff psychiatrist, filed a petition for continuing treatment and a request to treat with medication, listing Risperdal, Haloperidol, and Olanzapine as the proposed medications. On the request to treat with medication, Dr. Pryatel marked the box stating "[t]he respondent was offered the medication and refused it." Following a hearing, the District Court of Stutsman County issued a continuing treatment order on August 22, 2007, committing T.E. to the State Hospital for one year, or until further order of the court. The district court also issued an order to treat with medication, authorizing the State Hospital to treat T.E. involuntarily with Risperdal and Olanzapine until November 20, 2007.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 25–03.1–03. T.E.'s appeal is timely under N.D.R.App.P. 2.1(a) and N.D.C.C. § 25–03.1–29. This Court has ju-

risdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 25–03.1–29.

## II

[¶ 6] T.E. argues the August 22, 2007, forced medication order should be reversed because it would be his second forced medication order and forced medication is limited to one order of 90 days duration. He contends a State Hospital patient cannot be subjected to more than one 90–day medication order under the terms of N.D.C.C. § 25–03.1–18.1(3), which provides, "[t]he order for involuntary treatment with prescribed medication, however, may not be in effect for more than ninety days." The State argues, although N.D.C.C. § 25–03.1–18.1(3) specifies that a forced medication order shall not exceed 90 days, the statute does not restrict the number of times a court may review and issue additional 90–day orders.

[¶ 7] Resolution of this issue requires the interpretation of N.D.C.C. § 25–03.1–18.1(3), which is a question of law fully reviewable on appeal. *In re G.R.H.*, 2006 ND 56, ¶ 15, 711 N.W.2d 587. In *Public Serv. Comm'n v. Wimbledon Grain Co.*, 2003 ND 104, ¶¶ 20–21, 663 N.W.2d 186, this Court summarized the rules of statutory construction:

> [O]ur duty is to ascertain the Legislature's intent, which initially must be sought from the statutory language itself, giving it its plain, ordinary, and commonly understood meaning. N.D.C.C. §§ 1–02–02 and 1–02–03. If statutory language is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit, because the Legislature's intent is presumed clear from the face of the statute. N.D.C.C. § 1–02–05. If statutory language is ambiguous, a court may resort to extrinsic aids, including legislative history, to interpret the stat-

ute. N.D.C.C. § 1–02–39. A statute is ambiguous if it is susceptible to meanings that are different, but rational. *Shiek v. North Dakota Workers Comp. Bureau*, 2002 ND 85, ¶ 12, 643 N.W.2d 721.

Statutes must be construed as a whole and harmonized to give meaning to related provisions, and are interpreted in context to give meaning and effect to every word, phrase, and sentence. *Meljie v. North Dakota Workers Comp. Bureau*, 2002 ND 174, ¶ 15, 653 N.W.2d 62; *Doyle ex rel. Doyle v. Sprynczynatyk*, 2001 ND 8, ¶ 10, 621 N.W.2d 353. We presume the Legislature did not intend an absurd or ludicrous result or unjust consequences. *McDowell v. Gillie*, 2001 ND 91, ¶ 11, 626 N.W.2d 666. We construe statutes in a practical manner and give consideration to the context of the statutes and the purposes for which they were enacted. *Grey Bear v. North Dakota Dep't of Human Servs.*, 2002 ND 139, ¶ 7, 651 N.W.2d 611.

We believe the statute is ambiguous on this point because it is susceptible to different, but rational, meanings. Therefore, it is appropriate to review the legislative history in interpreting the statute.

[¶ 8] As originally enacted in 1991, N.D.C.C. § 25–03.1–18.1(3) contained the following language:

> However, no such provision is effective for more than ninety days, unless prior to the expiration of that time period the treating psychiatrist submits a report to the court indicating that the involuntary treatment with prescribed medication remains appropriate and necessary to effectively treat the patient. Based on such reports, a review of the patient's progress, and the patient's concerns, the court may extend its authorization for involuntary treatment with prescribed medication for additional ninety-day pe-

riods if the patient remains under an involuntary treatment order. 1991 N.D. Sess. Laws ch. 292, § 3. In 1993 the Legislature eliminated all of the language beginning with and following the word "unless." *See* 1993 N.D. Sess. Laws ch. 279, § 10. The statute currently states, "[t]he order for involuntary treatment with prescribed medication, however, may not be in effect for more than ninety days." *Id.*

[¶ 9] The 1993 amendment of the statute stemmed from S.B. 2370, which incorporated provisions of another bill introduced that legislative session, S.B. 2365. *See Hearing on S.B. 2365 Before Senate Human Services Comm.,* 53rd N.D. Legis. Sess. (Feb. 10, 1993) ("Senator Mathern suggested amending the intent of SB 2365 into SB 2370, including those amendments originally proposed for SB 2365"); *Hearing on S.B. 2370 Before Senate Human Services Comm.,* 53rd N.D. Legis. Sess. (Feb. 10, 1993) ("Senator Graba motioned to amend the bill to include the main provisions of SB 2365 and address conflicts in definitions"). The proposed amendment to N.D.C.C. § 25–03.1–18.1(3) appeared in S.B. 2365. The chair of the committee that drafted S.B. 2365 testified about the purpose of the amendment:

> [S]ubsection 3 provides specifically that the order for involuntary treatment with prescribed medication may no [sic] be in effect for more than 90 days. Under existing law the psychiatrist could submit a report to the court and the court could extend its authorization without hearing. Because of the invasive nature of forced medication the committee felt that it was appropriate if the order was going to be extended that a hearing on the issue be held.

*Hearing on S.B. 2365 Before Senate Human Services Comm.,* 53rd N.D. Legis. Sess. (Feb. 9, 1993) (written testimony of Orell Schmitz, legal counsel for Protection and Advocacy Project). The legislative history clearly reflects the intention of the 1993 amendments to N.D.C.C. § 25–03.1–18.1(3) was not to place a limitation on the number of 90–day forced medication orders that could be issued, but was to require a court hearing before an extension could be granted rather than allowing an extension based only on the report of a psychiatrist.

[¶ 10] Therefore, the district court's issuance of an additional 90–day forced medication order following a hearing on the matter does not violate N.D.C.C. § 25–03.1–18.1(3).

### III

[¶ 11] T.E. argues the district court erred in issuing the second forced medication order because he has not refused to take the prescribed medication since he has been subject to the first court order for forced medication.

[¶ 12] Before a district court may authorize involuntary treatment with prescribed medication, the treating psychiatrist and another licensed physician must certify, and the court must find, "[t]hat the patient was offered that treatment and refused it or that the patient lacks the capacity to make or communicate a responsible decision about that treatment." N.D.C.C. § 25–03.1–18.1(1)(a)(2). In this case, Dr. Pryatel alleged T.E. "was offered the medication and refused it," not that T.E. "lacks the capacity to make or communicate a responsible decision about the medication." A district court's findings by clear and convincing evidence that a patient needs appropriately prescribed medication and refuses it are findings of fact. *In re R.A.J.,* 554 N.W.2d 809, 810 (N.D. 1996). A district court's finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no

evidence to support it, or if, although there is some evidence to support it, on the entire evidence this Court is left with a definite and firm conviction a mistake has been made. *Interest of J.S.,* 2006 ND 143, ¶ 6, 717 N.W.2d 598.

[¶ 13] Dr. Pryatel, the staff psychiatrist, testified T.E. is simply unable to function without medication. The record reflects that T.E. continuously refused all medications until the first forced medication order was obtained in June 2007. It is also clear from the record T.E. does not believe he needs any treatment or medication and the only reason T.E. was taking the medication before the hearing was because he was forced to do so under the court's order. Dr. Pryatel testified:

Q: Doctor, part of this hearing is to determine whether or not the Court shall order [T.E.] to continue taking medication despite his refusals. Is he currently still refusing medication?

A: He's got a court order for medication previous to this. Because of that, we medicate him if he refuses the medication. So, the idea is that if the court order expires, then he will no longer be taking medication.

. . . .

Q: You stated before that prior to the medication order, he had been refusing medication, is that correct?

A: Correct.

Q: With what frequency was he refusing? Was it every day—

A: Every single dose.

Q: You stated that he doesn't understand the purpose of his medications?

A: Well, he, I don't think that he thinks he needs to be on the medication. I don't think he thinks he has a mental illness, and so, why take the medication if you don't have any reason to take it?

Q: So, would it be true to say that he doesn't understand the ramifications of not taking it?

A: Correct.

. . . .

Q: Does his mental illness substantially impair his ability to make positive judgments?

A: Correct.

Q: And how so?

A: Well, he's—he would not be taking the medication unless forced to by the court, so that's an impaired judgment right there, . . .

. . . .

A: He gets it in oral form, but if he refuses, then he gets an injection.

Q: My understanding is that there hasn't been any refusals for quite some time now.

A: The reason is because the threat, so to speak, is there that if he doesn't take it then he gets the injection. But if that's lifted, then—if the court order is lifted, it'll be soon to be back the other way. That he'll be refusing the medicine.

. . . .

Q: . . . Does he, has he expressing [sic] to the staff there that he's agreeable to the treatment?

A: You know, I just over heard [sic] him say, just right now, that I don't need treatment. So, the only reason he's accepting treatment is because it's more or less forced on him.

[¶ 14] T.E. testified:

Q: Would you be willing to take your medicine?

A: Yeah, I could. Yeah.

Q: The Doctor said that you complained and don't like to take the medication. Is that true?

A: Well, I don't think it's the best, they're too good. I don't think it's a good idea to take it. Could be addicting and I could, couldn't make me feel sick.

. . . .

Q: Does the medication seem to help you at all?

A: I don't think so.

Q: If the Judge said you had to take the medication though, would you do it?

A: Yeah, I suppose. I'm taking now.

[¶ 15] We need not address the broader issue of whether a previous refusal of medication that supported issuance of a first forced medication order can constitute a refusal to support issuance of a second forced medication order. The evidence in this case establishes that T.E. will refuse to take medication once the court-ordered medication period expires. We conclude the refusal requirement of N.D.C.C. § 25–03.1–18.1(1)(a)(2) can be met when a patient who is not literally refusing medication but is taking medication only because of a prior forced medication order indicates he would not take further medication unless ordered to do so by a court. *Cf. In re D.A.*, 2005 ND 116, ¶ 14, 698 N.W.2d 474 ("although D.A. was taking the Seroquel at the time of the hearing, we believe a mistake was not made in authorizing the use of Risperdal and Haloperidol, in light of the recent history of refusal of Seroquel and the relative brevity of the ninety-day Order to Treat with Medication"). We conclude the district court's finding that T.E. refused medication is not clearly erroneous.

### IV

[¶ 16] The order is affirmed.

[¶ 17] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, J., concur.

KAPSNER, Justice, concurring in part and dissenting in part.

[¶ 18] I concur in Part II of the majority opinion and respectfully dissent from Part III. I would hold the finding that T.E. has refused the medication is clearly erroneous, the petitioner has failed to meet his burden to involuntarily treat T.E. with prescribed medication, and the court's order to involuntarily medicate T.E. must be vacated.

[¶ 19] To support involuntary medication, each of the factors required by N.D.C.C. § 25–03.1–18.1(1)(a), must be proven by clear and convincing evidence. N.D.C.C. § 25–03.1–18.1(3); *Interest of C.W.*, 552 N.W.2d 382, 385 (N.D.1996); *Interest of J.S.*, 528 N.W.2d 367, 368 (N.D. 1995). At issue here is the requirement "[t]hat the patient was offered that treatment and refused it." N.D.C.C. § 25–03.1–18.1(1)(a)(2). There is no evidence, much less clear and convincing evidence, that T.E. has been offered his medicine and refused to take it since the prior order was in place.

[¶ 20] Indeed, counsel for petitioner at oral argument conceded there was no evidence of actual refusal since the prior medication order was issued. Instead, petitioner argues and the majority opinion interprets refusal to mean taking medication because one is subject to a court order. This makes a mockery of the plain language of the statute.

[¶ 21] This interpretation also defeats the time limitation statutorily imposed by N.D.C.C. § 25–03.1–18.1(3): "The order for involuntary treatment with prescribed medication, however, may not be in effect for more than ninety days." If taking the medication under a court order is treated as "refusal," then involuntary treatment orders can be endless rather than finite.

[¶ 22]   To give meaningful effect to the 90–day statutory limit, and the evidentiary burden of clear and convincing evidence of the four factors under N.D.C.C. § 25–03.1–18.1(1)(a), when an order is based upon refusal, it must be allowed to end and a new actual refusal established.  The procedures for commitment are clear that it is the right of the patient "to be free from unnecessary medication."  N.D.C.C. § 25–03.1–40(10).  Further, N.C.C.C. § 25–03.1–33 specifically provides that "[n]o determination that a person requires treatment . . . operates as an adjudication of legal incompetence, or of the inability to give or withhold consent."

[¶ 23]   The portions of the transcript cited by the majority make clear that T.E. is taking his medication.  The majority says that same evidence proves T.E. "will refuse" to take the medication once the order expires.  Prediction does not meet the requirements of the statute.  Petitioner must show, by clear and convincing evidence, T.E. "was offered" and "refused" to take the treatment.  Prediction does not meet the evidentiary burden;  actual refusal is required.

[¶ 24]   Allowing an order for involuntary medication to expire to determine whether a patient will thereafter voluntarily continue any needed medications is consistent both with the requirements of N.D.C.C. § 25–03.1–18.1 and the express legislative intent to "[s]afeguard individual rights."  N.D.C.C. § 25–03.1–01(2).  Further, from a practical perspective, although an expiration may mean a short lapse in medication, the determination of whether a patient has achieved sufficient insight to voluntarily continue does support a therapeutic objective.  An assessment of the patient's progress or lack of progress cannot be made if a subsequent order is based solely on the prediction that the patient *will* refuse, despite the fact the patient is currently taking the medication.  And in many instances, including T.E.'s, the expiration of a 90–day involuntary medication order will occur well in advance of the expiration of the ongoing continuing treatment order.  In T.E.'s case, the treatment order extends until August 22, 2008.  The expeditious procedures of Chapter 25–03.1 allow a subsequent involuntary medication order to be quickly obtained, should one be needed and clear and convincing evidence be demonstrated, while T.E. remains under the terms of his treatment order.

[¶ 25]   Mary Muehlen Maring