David E. RUFF, Plaintiff-Appellant-Cross Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION,
Defendant-Respondent-Cross Appellant,

AUTO-OWNERS INSURANCE CO., and The Fess
Hotel, Defendants-Respondents.

Court of Appeals

*No. 89–2238. Submitted on briefs September 7, 1990.—Decided
November 15, 1990.*

(Also reported in 464 N.W.2d 56.)

For the plaintiff-appellant-cross respondent the cause was submitted on the briefs of *Jeff Scott Olson* of *Julian, Olson & Lasker, S.C.* of Madison.

For the defendant-respondent-cross-appellant the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Lowell E. Nass,* assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J.    David Ruff appeals from a judgment affirming in part a decision of the Labor and Industry Review Commission. The issue is whether "actual wage loss" within the meaning of sec. 102.44(6)(a), Stats.,[1] includes only wage loss sustained at the employment

---

[1]The statute provides that where an injured employee has returned to work for their employer after an injury, loss of earning capacity may not be considered in setting an award for permanent

where an injury occurs or whether the term also encompasses wages lost in a second job. We conclude that the statute reaches only the wages lost in the job in which the employee was injured. We therefore affirm the judgment in that respect.

The commission cross-appeals, arguing that the trial court erred in concluding that the commission's finding that Ruff sustained only one percent permanent partial disability was not supported by substantial evidence. We agree with the commission and reverse on this issue.

Ruff was working fulltime as a chef at the Fess Hotel in Madison in July 1986, earning approximately $262 per week, when he injured his back while carrying cooking supplies. While the injury forced him to modify his job activities, Ruff did not miss any work or lose any wages at the hotel. He received chiropractic treatment for thirteen months.

At the time of his injury Ruff held a second job as a cab driver, earning approximately $120 per week. Because the pain in his back was exacerbated by sitting for long periods of time, he quit his job with the cab company on the advice of his chiropractor.

A worker's compensation hearing examiner found that Ruff had incurred a twenty-five percent permanent partial disability, based on evidence that his back injury had diminished his earning capacity. On appeal, the commission ruled that sec. 102.44(6), Stats., barred an award of permanent partial disability benefits based on Ruff's loss of earning capacity because he had suffered no wage loss in his job at the hotel, where he sustained the injury. The commission awarded him disability

disability "unless the actual wage loss in comparison with earnings at the time of injury equals or exceeds 15%."

241

based only on his physical limitations, which it determined to be one percent.

The circuit court affirmed the commission's finding that Ruff should be compensated only for his physical limitation, but reversed the disability finding of one percent as not supported by substantial evidence.

■

Whether an injured employee's "actual wage loss" under sec. 102.44(6)(a), Stats., includes only losses sustained at the employment where the injury occurred is a question of law. And while "special deference [is] to be afforded an agency [decision when it] is the result of a course of uniform interpretation over a period of time[,] . . . [where] there is no evidence of any special expertise or experience, the weight to be afforded an agency interpretation is no weight at all." *Local No. 695 v. LIRC,* 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990). There is nothing in the record before us to establish that the commission has had any experience in interpreting the phrase "actual wage loss" against these facts of first impression. It follows that our review of the commission's decision is *de novo.*

Permanent disability awards under the worker's compensation law are based either on the claimant's loss of earning capacity or on his or her loss of bodily function. As is the case here, an award based on loss of earning capacity will often be greater than one based on loss of bodily function. Section 102.44(6), Stats., limits the circumstances under which an award may be based on loss of earning capacity. For employees who have been able to stay on the job and whose actual wage loss is less than fifteen percent, the statute provides that the disability award be based only on loss of bodily function.

Ruff argues that his "actual wage loss" within the meaning of sec. 102.44(6), Stats., includes both his

income as a chef and his income as a cab driver. Since he was forced to quit his job as a cab driver and thus lost more than fifteen percent of his total income, he argues that his disability award should be measured by the higher "loss of earning capacity" standard. He bases this argument on two assertions. First, he points out that there is nothing in the statute which limits the concept of actual wage loss to those from the employer where the injury was sustained. Second, he contends that limiting "actual wage loss" to wages from the employer where the injury occurred would not be in harmony with the statute's intent. We are not persuaded. We believe the intent and meaning of the statute is plain on its face.

Section 102.44(6)(f), Stats., provides that "[w]age loss shall be determined on wages, as defined in s. 102.11." Section 102.11(3) states that wage loss means "impairment of . . . earning capacity in the employment in which [the worker] was working at the time of the injury . . .."

Since the statutes do not provide a different method of computing "actual wage loss" when a claimant has more than one job, we must follow their plain language; and we see that language as requiring that computation of Ruff's wage loss be limited to wages from his hotel job because that is "the employment" in which he was "working at the time of injury." Since he lost no income in that employment, his disability benefits must be based only on his physical limitations. "[We] are not free to determine whether different provisions would have been enacted if the legislators had given . . . attention to the application of the statute upon a particular set of facts." *State ex rel. Neelen v. Lucas,* 24 Wis. 2d 262, 268, 128 N.W.2d 425, 429 (1964).

On its cross-appeal, the commission argues that there is credible and substantial evidence to support its finding that Ruff sustained only one percent permanent partial disability and that the circuit court erred in reversing its order.

"If the commission's order or award depends on any fact found by the commission, the court shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact." Sec. 102.23(6), Stats. "In evaluating medical testimony, the department is the sole judge of the weight and credibility of the witnesses." *Manitowoc County v. ILHR Dep't*, 88 Wis. 2d 430, 437, 276 N.W.2d 755, 758 (1979) (citations omitted).

The commission found Ruff's functional capacity loss to be one percent, apparently based on a letter written by Dr. Sievert, an orthopedic surgeon. Sievert stated that "there is permanent partial disability of 2% of the whole person, work related . . . .. [One percent should be] apportioned to [a] 2/29/84 work injury, and 1% [should] be apportioned to the 7/27/86 work injury." In concluding that Ruff suffered residual effects from the earlier 1984 accident, Sievert noted that there was a "significant discrepancy" between Ruff's own version of his medical history (he said that he saw a chiropractor for one or two months following the 1984 injury), and the records from his chiropractor, which indicated that Ruff received chiropractic treatment for ten months following the 1984 injury.

At the hearing, Ruff explained this discrepancy by saying that he recovered after only two months in 1984, but continued his treatment because the chiropractor's secretary was nice and kept calling him to make appointments. Sievert was then asked if Ruff's explanation

changed his opinion regarding residual injury from the 1984 incident:

Q. It's your testimony that you would have imposed restrictions [on Ruff after the 1984 accident]?

A. Based on what I knew when I saw him, yes.

Q. How about based on what you heard today?

A. Based on what he said today I probably wouldn't modify that.

Q. Okay. And what would you modify it to?

A. Probably not re-retroactively put restrictions upon him.

Q. Given his testimony here today is it fair to say that you would not have imposed any physical restrictions on him at all after the end of the summer of 1984?

A. Yes, probably not.

Based on this testimony, the circuit court agreed with Ruff that Dr. Sievert recanted his earlier opinion, attributing the entire two percent disability determination to the 1986 injury; therefore, the court reversed the commission's finding of one percent disability as not based on credible and substantial evidence.

We believe Dr. Sievert's testimony was ambiguous at best, and it is the exclusive function of the commission to reconcile inconsistencies in the testimony of the witnesses. *Carr v. Industrial Comm'n*, 25 Wis. 2d 536, 539, 131 N.W.2d 328, 330 (1964). We conclude, therefore, that the circuit court erred in attempting to reconcile the inconsistent testimony of Dr. Sievert. That was the commission's function.

*By the Court.*—Judgment affirmed in part; reversed in part.