2003 ND 42

Douglas GRONFUR, Claimant and Appellant,

v.

NORTH DAKOTA WORKERS COMPENSATION FUND, Appellee,

and

Halliburton Energy Services, Inc., Respondent.

No. 20020250.

Supreme Court of North Dakota.

March 26, 2003.

Kevin J. Chapman, Chapman Law Office, Williston, ND, for claimant and appellant.

Harry Malcolm Pippin, Special Assistant Attorney General, Williston, ND, for appellee.

KAPSNER, Justice.

[¶ 1] Douglas Gronfur appealed from a district court judgment affirming an order of the North Dakota Workers Compensation Bureau denying Gronfur's reapplication for temporary total disability benefits. We hold the Bureau properly interpreted and applied N.D.C.C. § 65–05–08(1) in concluding Gronfur did not demonstrate an actual wage loss, and we affirm the denial of Gronfur's request for additional benefits.

I

[¶ 2] Gronfur injured his back in July 1996 when he lifted an eight foot section of two inch iron while working as a service operator for Halliburton Energy Services in Williston. Gronfur promptly filed a claim for workers compensation benefits, and the Bureau accepted liability for the injury, paid his medical expenses, and began paying him temporary total disability benefits. On October 8, 1997, the Bureau issued an order discontinuing Gronfur's temporary total disability payments but awarding him temporary partial disability benefits, based upon its finding that Gronfur was presently capable of performing light duty work. The Bureau found Gronfur's preinjury earning capacity was $614.00 per week but with his work injury medical limitations he had an earning capacity of only $340.70 per week. Based upon those findings, the Bureau calculated Gronfur's partial disability benefit under N.D.C.C. § 65–05–10, and began paying him "$889.52 every 28 days." Gronfur now claims that he was not capable in 1997 of performing light duty work. However, he concedes that he neither contested that finding by the Bureau nor appealed the October 8, 1997, order awarding him partial disability benefits.

[¶ 3] On February 23, 2000, Gronfur filed a reapplication for temporary total disability benefits under N.D.C.C. § 65–05–08(1), asserting that the medical condition of his back had become worse, with symptoms of extreme muscle spasms, pain, numbness, and swelling. His doctors advised that he undergo spinal fusion surgery to relieve his symptoms. Gronfur agreed to have the surgery. In his reapplication for disability benefits Gronfur asserted that as a result of his worsened medical condition he was not capable of performing any work while recuperating from the surgery and that in the future he would be capable, at most, of performing only sedentary work. The Bureau approved payment of Gronfur's spinal sur-

gery, concluding Gronfur had sustained a significant change, or worsening, of his compensable medical condition. However, in an order issued April 28, 2000, the Bureau denied Gronfur's reapplication for disability benefits upon finding "[t]he greater weight of the evidence does not indicate claimant suffered an actual wage loss caused by a significant change in his compensable medical condition because he has not worked since July 26, 1996, and was unemployed and not earning any wages at the time of his February 23, 2000, reapplication." Based upon this finding, the Bureau concluded Gronfur "has not proven actual wage loss caused by a significant change in his compensable medical condition in connection with his February 23, 2000, application." Gronfur appealed to the district court from the Bureau's denial of his reapplication for disability benefits, and the district court upheld the Bureau's decision.

## II

[¶ 4] On appeal, Gronfur asserts the Bureau misinterpreted and misapplied N.D.C.C. § 65–05–08(1) in denying him additional benefits on the ground that he failed to demonstrate an actual wage loss.

[¶ 5] Under N.D.C.C. § 28–32–46 the district court must affirm an administrative agency order unless it finds any of the following:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

On appeal, this Court under N.D.C.C. § 28–32–49 reviews the judgment of the district court in the same manner. *See Grand Forks Professional Baseball, Inc. v. N.D. Workers Comp. Bureau*, 2002 ND 204, ¶ 8, 654 N.W.2d 426. In evaluating an administrative agency's findings of fact, we do not make independent findings of fact or substitute our judgment for that of the agency, but determine only if a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Boger v. N.D. Workers Comp. Bureau*, 1999 ND 192, ¶ 12, 600 N.W.2d 877. The interpretation of a statute is a question of law which is fully reviewable by this Court on appeal. *Jensen v. N.D. Workers Comp. Bureau*, 1997 ND 107, ¶ 9, 563 N.W.2d 112. If an appeal presents only a question of law, this Court affirms the Bureau's order unless it is not in accordance with the law. *Id.*

[¶ 6] Under N.D.C.C. § 65–01–11 a workers compensation claimant must establish by a preponderance of the evidence his or her right to receive benefits from the fund. *Boger*, 1999 ND 192, ¶ 11, 600 N.W.2d 877. A claimant must, therefore, prove by a preponderance of the evi-

dence that he is eligible for temporary disability benefits. *See Rooks v. N.D. Workers' Comp. Bureau,* 506 N.W.2d 78, 80 (N.D.1993). When a claimant has received disability benefits, those benefits have been discontinued, and the claimant then sustains a significant change in medical condition which causes further wage loss, the claimant may reapply to "begin payment again" under N.D.C.C. § 65–05–08(1).[1] *See Baier v. N.D. Workers Comp. Bureau,* 2000 ND 78, ¶¶ 11,12, 609 N.W.2d 722.

[¶ 7] Section 65–05–08(1), N.D.C.C., provides, in relevant part:

> If the period of disability is five consecutive calendar days' duration or longer, benefits must be paid for the period of disability provided that:
>
> 1. When disability benefits are discontinued, the bureau may not begin payment again unless the injured employee files a reapplication for disability benefits on a form supplied by the bureau. In case of reapplication, the award may commence no more than thirty days before the date of reapplication. Disability benefits must be reinstated upon proof by the injured employee that:
>     a. The employee has sustained a significant change in the compensable medical condition;
>     b. The employee has sustained an actual wage loss caused by the significant change in the compensable medical condition; and
>     c. The employee has not retired or voluntarily withdrawn from the job market as defined in section 65–05–09.3.

[¶ 8] The Bureau found Gronfur had met his burden of proving he sustained a significant change in his compensable medical condition. The deterioration of Gronfur's back condition required him to undergo spinal fusion surgery and the Bureau approved payment for those medical costs. However, the Bureau found Gronfur was not entitled to additional disability benefits, because Gronfur failed to prove that he had sustained an "actual wage loss" under N.D.C.C. § 65–05–08(1)(b). That determination by the Bureau involved a finding of fact and an interpretation and application of the statute. The relevant finding was that Gronfur "has not worked since July 26, 1996, and was unemployed and not earning any wages at the time of his February 23, 2000 reapplication." Gronfur does not dispute the finding. He concedes that after his total disability benefits were terminated and he was awarded partial disability benefits on October 8, 1997, he never sought employment of any type. He also concedes that he was not gainfully employed when he filed his reapplication for benefits.

[¶ 9] Gronfur's objection to the Bureau's decision is that the Bureau has construed N.D.C.C. § 65–05–08(1)(b) as requiring him to prove he has sustained an actual wage loss caused by his changed condition by showing he was employed and earning wages prior to the change which

---

1. Although Gronfur's total disability payments where discontinued in 1997 he continued to receive partial disability payments. When Gronfur's medical condition became worse he filed a reapplication for total disability benefits under N.D.C.C. § 65–05–08(1). Neither party has questioned the applicability of that statute to this situation. The parties are in agreement the statute applies and Gronfur properly made reapplication for total disability benefits under the statute because his total disability benefits had been discontinued. Consequently, the issue of whether N.D.C.C. § 65–05–08(1) is applicable when a claimant continues to receive one type of disability benefit while another type has been discontinued has not been raised by either party and we do not address it in this case.

left him unable to continue working. Gronfur asserts that because his current medical condition limits him to either doing no work, or at most sedentary work, he has experienced a loss of earning capacity and that loss should satisfy the requirements of the statute and qualify him to receive either total disability benefits or an increase in his partial disability payments.

[¶ 10] Our primary goal of statutory construction is to ascertain the intent of the legislature. *Shiek v. N.D. Workers Comp. Bureau,* 2002 ND 85, ¶ 12, 643 N.W.2d 721. In ascertaining the legislature's intent, we first look at the plain language of the statute and give every word of the statute its ordinary meaning. *Id.* Words used in a statute are to be understood in their ordinary sense, unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. If a statute is clear and unambiguous we do not disregard the letter of the statute under the pretext of pursuing its spirit. N.D.C.C. § 1–02–05; *Grand Forks Professional Baseball, Inc. v. N.D. Workers Comp. Bureau,* 2002 ND 204, ¶ 10, 654 N.W.2d 426.

[¶ 11] To begin payment of previously discontinued disability benefits a claimant must prove under N.D.C.C. § 65–05–08(1)(b) that the claimant has sustained "an actual wage loss caused by the significant change in the compensable medical condition." We conclude this provision is clear and unambiguous.

[¶ 12] Although the legislature has not defined the term "actual wage loss," the term wages is defined under N.D.C.C. § 65–01–02(31):

"Wages" means an employee's remuneration from all employment reportable to the internal revenue service as earned income for federal income tax purposes.

Using that definition of wages in the context of "actual wage loss" under N.D.C.C. § 65–05–08(1)(b), the claimant must prove that he has sustained an actual loss of remuneration from employment which would be reportable to the internal revenue service as earned income for federal income tax purposes. The requirement is clear. To demonstrate an actual loss of wages or remuneration as a result of a change in the claimant's compensable medical condition, the claimant must necessarily first demonstrate that he was earning wages from employment [2] when the change in his medical condition occurred and must then show that the change caused at least a partial loss of those wages.

[¶ 13] Gronfur's attempt to equate actual wages with earning capacity is misplaced. The distinction between those terms is clearly recognized in workers compensation law as explained in 4 Larson's Workers' Compensation Law § 81.01, at p. 81–2:

Degree of disability is calculated under most acts by comparing actual earnings before the injury with earning capacity after the injury.

It is at once apparent that the two items in the comparison are not quite the same. Actual earnings are a relatively concrete quantity.... Earning capacity, however, is a more theoretical concept. It obviously does not mean actual earnings, since the legislature deliberately chose a different phrase for the post-injury earnings factor.

2. Gronfur concedes that, after he was awarded partial disability benefits, he made no attempt to find employment with the restrictions recognized by the Bureau's findings he was capable of light duty work. Consequent- ly, this opinion does not address the possibility that an actual wage loss may be shown by a claimant's unsuccessful diligent efforts to obtain wages from employment.

*See also Shiek,* 2002 ND 85, ¶ 15, 643 N.W.2d 721 (noting the definition of disability is broader than lost wages, it means loss of earning capacity); *Business Ins. Co. v. BFI Waste Systems of North America, Inc.,* 23 P.3d 1261, 1265 (Colo.App. 2001) (recognizing distinction between "actual wage loss" and "loss of future earning capacity"); *Ruff v. Labor and Industry Review Comm'n,* 159 Wis.2d 239, 464 N.W.2d 56, 58 (Ct.App.1990) (applying statutory scheme distinguishing between "actual wage loss" and "loss of earning capacity");' *Gobler v. Auto Owners Ins. Co.,* 139 Mich.App. 768, 362 N.W.2d 881, 885 (1984) (receipt of survivor benefits from no-fault auto insurer required proof of "actual loss of wages" as opposed to "loss of earning capacity").

[¶ 14] The facts of this case point out the inconsistency of using "actual wage loss caused by a significant change in the compensable medical condition" as the basis for reapplying for disability benefits. Disability benefits are a substitute for loss of earning capacity. *See* N.D.C.C. § 65–01–02(15); 65–05–10; *Wright v. N.D. Workers Comp. Bureau,* 2001 ND 72, ¶ 27, 625 N.W.2d 256. Gronfur has already established a loss of earning capacity. Further, the Bureau accepts the fact that the medical condition creating his disability has substantially worsened. While the legislature could have made diminution of earning capacity as a result of a worsening medical condition the standard by which a claimant could restart discontinued benefits under N.D.C.C. § 65–05–08(1)(b), it did not do so. Rather, the legislature clearly made proof of actual wage loss as a result of the worsening medical condition the requirement for restarting previously discontinued disability benefits.

### III

[¶ 15] We conclude the Bureau interpreted and applied N.D.C.C. § 65–05–

08(1) in accordance with the law. Gronfur, by choosing not to seek employment and by not earning employment wages when he sustained a change in his compensable medical condition, failed to incur an actual wage loss as a result of the change in his medical condition. Gronfur was unable, therefore, to prove the actual wage loss which is a prerequisite to reinstating discontinued disability benefits under the statute. We, therefore, affirm the district court judgment upholding the Bureau's order denying Gronfur's reapplication for disability benefits.

[¶ 16] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, J., concur.

MARING, Justice, dissenting.

[¶ 17] I do not agree with the majority opinion, which concludes that in order to successfully reapply for disability benefits an employee must first prove "he was earning wages from employment when the change in his medical condition occurred...." Not even the Workers Compensation Bureau has taken this position. In this case, the Hearing Officer concluded not only that Gronfur had not been working, but that he did not "actively seek employment within the determined activity and work restrictions ... contrary to [N.D.C.C.] § 65–05.1–04 and § 65–05–08(7)." The Bureau adopted the Hearing Officer's findings of fact and conclusions of law. The Bureau specifically argues on appeal that their interpretation of "actual wage loss" is consistent with chapter 65–05.1 on rehabilitative services, which requires the employee to make a good faith work trial or work search. N.D.C.C. § 65–05.1–04(1) and (4). The Bureau also points to N.D.C.C. § 65–05–08(6):

It is the burden of the employee to show that the inability to obtain employ-

ment or to earn as much as the employee earned at the time of injury is due to physical limitation related to the injury, and that any wage loss claimed is the result of the compensable injury.

Therefore, "actual wage loss" can be established by showing an inability to obtain employment. The Bureau takes the position that this inability to obtain employment is proven by a job search and evidence of rejection for jobs based on the physical impairment caused by the work injury. I am at a loss as to why "an inability to obtain employment" cannot be proven by medical evidence that the employee is totally disabled from any work as a result of the work injury. Such is the case here from April 14, 2000, through October 5, 2000.

[¶ 18] Finally, there is nothing in the legislative history of Senate Bill 2206 (1991) that I can find to explain why the legislature amended N.D.C.C. § 65–05–08, adding the requirement of a finding of "actual wage loss" or what it means. Section 65–01–02(15), N.D.C.C., defines "disability" as "loss of earnings capacity and may be permanent total, temporary total, or partial." As previously noted, to receive disability benefits, the employee must show a physical limitation related to the work injury that caused the employee to be unable to obtain employment or "to earn as much as the employee earned at the time of injury" and that the wage loss is the result of the injury. N.D.C.C. § 65–05–08(6). Under N.D.C.C. § 65–05–09(1), where the employee suffers disability but is able to return to employment for twelve consecutive months, temporary total or permanent total disability benefits are based on the wage in effect at the time the disability recurs or on the wage the employee received prior to the injury, whichever is highest. Partial disability benefits are based on the "difference between the injured employee's average weekly wages

before the injury and the employee's wage earning capacity after the injury in the same or another employment." N.D.C.C. § 65–05–10. The employee's earning capacity for the purpose of calculating partial disability benefits "may be established by expert vocational evidence of a capacity to earn." N.D.C.C. § 65–05–10(3). Whether claiming temporary total, permanent total, or partial disability benefits, the employee's pre-injury wage is utilized. Gronfur proved his pre-injury wage. In its Order of October 8, 1997, the Bureau concluded Gronfur's average weekly wage was $614.00 at the time of his injury. The Bureau concluded he was entitled to partial benefits due to his injury and that he had a retained earnings capacity of $340.70 per week.

[¶ 19] It does not seem logical to me that an employee who is medically incapable of working at all for a period of time due to a worsening of his work injury is not entitled to temporary total disability benefits. Although I cannot equate "loss of retained earnings capacity" with "actual wage loss," I am of the opinion that "actual wage loss" can be proven by showing "an inability to obtain employment," which in turn can be proven by medical evidence that the employee is totally disabled from performing any work.

[¶ 20] I, therefore, dissent and would reverse the denial of temporary total disability benefits from April 14, 2000, through October 5, 2000.

[¶ 21] WILLIAM A. NEUMANN, J., concurs.