2003 ND 60

Beverly LESMEISTER, Claimant and Appellee,

v.

NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellant,

and

Lutheran Home of the Good Shepherd, Respondent.

No. 20020265.

Supreme Court of North Dakota.

April 15, 2003.

Daniel E. Phillips, Schneider, Schneider & Phillips, Fargo, for claimant and appellee.

Leo F.J. Wilking, Special Assistant Attorney General, Nilles, Hansen & Davies, Fargo, for appellant.

NEUMANN, Justice.

[¶ 1]  The North Dakota Workers Compensation Bureau appeals from a district court judgment reversing a Bureau order denying Beverly Lesmeister disability benefits on her reapplication for a 1983 work injury and on her application for a 1999 work injury. We hold the Bureau's findings that Lesmeister was terminated for misconduct and did not sustain an actual wage loss caused by any significant worsening of her 1983 work injury and that she was not entitled to disability benefits as a result of her 1999 work injury are supported by a preponderance of evidence. We reverse.

I

[¶ 2]  In 1983, Lesmeister injured her lower back while lifting a patient into bed during the course of her employment as an LPN at the City Hospital in New Rockford.  The Bureau accepted liability for Lesmeister's back injury, and thereafter paid her medical benefits and periodically paid her total and partial disability benefits.  In 1985, Lesmeister began working at the Lutheran Home of the Good Shepherd, a nursing home in New Rockford. After many years of low back pain and periodic receipt of total and partial disability benefits, Lesmeister underwent back surgery in February 1996 and returned to work at Good Shepherd that summer. Lesmeister also had a history of right ankle problems, and in September 1998, Dr. Bruce Piatt performed a "[r]ight ankle exploration and debridement of flexor hallucis longus tendon."  In late 1998 and early 1999, Lesmeister's back condition worsened, and she completed a three-week chronic pain management program in March 1999.  Lesmeister did not work from March 8, 1999 through June 1, 1999, and she received total disability benefits during that time.

[¶ 3]   After Lesmeister completed the pain management program, the Bureau's vocational rehabilitation provider, CorVel, assisted her in returning to work at Good Shepherd.   An April 1999 report by CorVel's Mike Almquist stated "there [were] many problems with employer and injured worker.   The shifts are over eight hours and injured worker is restricted to eight hours per day.   A mediator is needed to work through the problems or she will lose her job."   Almquist's report further provided:

> I met with Mr. Tim Hager, [Good Shepherd] Administrator and Ms. [Vicky] Richter, [Good Shepherd] Director of Nursing on April 8, 1999.   I met with Ms. Lesmeister at her home on April 9, 1999.   I met with all parties in a meeting held on Monday, April 12, 1999.   At the latter meeting it was decided that Ms. Lesmeister would be taken off the schedule and not allowed to work until she could work a full work day, the hours it takes for the work to be done. We agreed that I would contact both Dr. [Scott] Turner[, the physician treating Lesmeister's back,] and Dr. Piatt to see if they would release Ms. Lesmeister to work part time, 3 days per week but full shifts on those particular days.   The employer seemed willing to schedule her part time and hopefully work to full time.   The employer feels that if Ms. Lesmeister really wants to work she will convince the doctors that she can give it a trial basis.

[¶ 4]   Thereafter, Dr. Turner, in consultation with Dr. Piatt, released Lesmeister to return to work on June 1, 1999, at a sedentary-light / light level on the night shift with a maximum of three nights in a row followed by one to two nights off. Lesmeister returned to work at Good Shepherd under those restrictions on June 1, 1999, and her disability benefits were terminated in June 1999.   The parties agree Dr. Turner's June 1, 1999 work release is the benchmark for determining whether or not Lesmeister sustained a significant change in her compensable medical condition under N.D.C.C. § 65–05–08(1).

[¶ 5]   In the ensuing months, Lesmeister continued to seek medical treatment for her back.   On June 9, 1999, Dr. Turner saw Lesmeister, and he reported she had increased pain with increased activity and she described a knife-like pain in her back. Dr. Turner restricted Lesmeister from crawling and required her to get help releasing brakes on beds.   On July 12, 1999, and on August 12, 1999, Dr. Turner saw Lesmeister, and he continued her work restrictions.

[¶ 6]   On September 1, 1999, Lesmeister tripped on molding during the course of her employment at Good Shepherd. Dr. James M. Craig initially treated Lesmeister for this injury on September 10. Dr. Craig reported a "muscular ligamentous strain to the right ankle with secondary pain to the right calf and right thigh and exacerbation of pain to the lower back," and took Lesmeister off work.   On September 14, Dr. Turner saw Lesmeister, and he noted she experienced increased low back pain and right ankle pain.   Dr. Piatt also saw Lesmeister on September 14, and he reported she had "a little sprain of the ankle."   On September 15, Dr. Craig saw Lesmeister, and he reported she felt "significantly better and essentially turned back to its normal condition." Dr. Craig released Lesmeister to work under the previous restrictions.

[¶ 7]   On October 14, 1999, Lesmeister saw Dr. Turner with complaints of increased neck, low back, ankle, and toe pain.   On October 14, Dr. Piatt also saw Lesmeister, and he reported she had dropped a fifty pound camshaft on her

right toe in a non-work related injury, she was having pain in the toe as well as the posterior medial ankle, and the pain in her ankle had not really resolved much. Dr. Piatt suggested a consultation at the University of Minnesota.

[¶ 8] On October 18, 1999, Lesmeister tripped on electrical cords during the course of her employment at Good Shepherd. On November 4, 1999, Dr. Turner saw Lesmeister, and he reported she had tripped on electrical cords at work, which flared up her back pain. Dr. Turner reported Lesmeister complained of "knife-like pain" in her back, severe discomfort in her left lower extremity to the knee, right leg pain with numbness in her toes, sleep loss, and trouble lifting her right leg. Dr. Turner noted Lesmeister arose from a seated to a standing position with "slight difficulty." On November 10, Dr. Craig saw Lesmeister, and he reported her back injury was exacerbated by the October 18, 1999 work-related injury. Dr. Craig diagnosed a "workman's comp back injury with exacerbation on 10–18–99, nonresponsive to outpatient therapy," and admitted her to a hospital for physical therapy, pain medication, and muscle relaxants. However, Dr. Craig discharged Lesmeister on November 11, indicating the Bureau "apparently reviewed her condition and felt she was not a candidate for inpatient therapy and . . . she could be treated as an outpatient." On November 15, a physical therapist encouraged Lesmeister to " . . . avoid sitting for more than 30 min., not to do any lifting, to be laying prone on elbows for 5–10 min. several times per day and to be as active as she can w/o increasing her pain including walking." On November 19, Dr. Craig saw Lesmeister, and he reported her pain was "about the same." On November 23, Dr. Turner saw Lesmeister, and he reported she was still having back discomfort and knife-like pain, and she had some difficulty getting up out of a chair.

[¶ 9] Meanwhile, in November 1999, a co-worker reported Lesmeister had slapped a patient. Vicky Richter, the Director of Nursing at Good Shepherd, completed an investigative report in which she was "unable to determine" if the slapping incident occurred. Richter and Good Shepherd Administrator Timothy Hagar contacted the State Board of Nursing and were advised there was no way to prove guilt or innocence for the investigation. On November 29, 1999, Good Shepherd terminated Lesmeister's at will employment "without cause."

[¶ 10] On December 9, 1999, Dr. Turner saw Lesmeister, and he reported she was still having knife-like pain in her back and trouble sleeping. Dr. Turner reported no change in physical findings from Lesmeister's last visit. On December 21, Dr. Turner again saw Lesmeister, and he reported little change from her last visit. Dr. Turner recommended that Lesmeister "may want to consider Social Security Disability." On December 21, Dr. Piatt also saw Lesmeister, and he reported:

> Patient with right ankle who at this time appears to be doing pretty well. I discussed with her that I think her best option for her future is to kind of modify her activities and would continue her on a work program similar to what she had been. Would allow her to weightbear as tolerated on the ankle although would keep her hours down to less than eight hours a shift with frequent times where she can get off her feet as necessary. Would also have her avoid climbing, crawling, kneeling. Would not have her pushing or pulling or lifting more than just a couple of pounds, maybe up to 10 pounds. Have also had it where it worked very nicely for her in the past to have days off in between her days at work so that she is working kind of an

every other day type pattern as this allows her ankle and foot to recover and has helped to control the symptoms. I would keep this as kind of a permanent restriction at this time.

[¶ 11] In January 2000, Lesmeister saw Dr. Thomas Wise and Dr. Chris Coetzee at the University of Minnesota. Their assessment was "Right ankle pain. We do not feel she has an exacerbation of her tendinitis, based on her physical exam. We feel this is rather a residual symptom from an ankle sprain." They recommended "no restrictions in regard to her ankle. We instructed her to do activities as functionally tolerated and to continue her physical therapy."

[¶ 12] On February 17, 2000, Lesmeister saw her regular physician, Dr. Patrick Moore, who reported Lesmeister continues to experience low back pain with numbness in her right foot and diagnosed her with chronic low back pain, sleep disorder, depression, anxiety, and hypothyroidism. Dr. Moore encouraged Lesmeister to continue the disability application process. After seeing Lesmeister on March 23, 2000, Dr. Moore wrote to the Bureau to clarify her long-term picture. Dr. Moore indicated Lesmeister's "status has not improved in over a year, and it is felt that she has reached maximum medical benefit, and in essence, because of her restrictions, is unemployable in her current occupation." Dr. Moore saw Lesmeister on April 27, 2000, and he reported "chronic work-related low back pain." On September 9, 2000, Dr. Moore noted Lesmeister continued to have a great deal of difficulty with her right knee and ankle pain and "[p]retty much any type of activity causes ankle, knee, or back pain to flare up." Dr. Moore continued Lesmeister's work restrictions. On October 5, 2000, Dr. Moore recommended Lesmeister continue with her present work restrictions and try to find work within those guidelines.

[¶ 13] In an April 3, 2001 letter to Lesmeister's counsel, Dr. Moore stated Lesmeister could walk or stand only 2–4 hours out of an 8–hour day; could lift less than 10 pounds; could sit for no more than 4 hours out of an 8–hour day; could not bend, squat, or crawl; could not push or pull greater than 10 pounds with her upper or lower extremities; and could not do more than sedentary work on a limited basis. In a June 29, 2001 letter to Lesmeister's counsel, Dr. Moore stated Lesmeister had a significant change in her back condition in November 1999, and as a result of that change, she was unable to perform her job at the nursing home since November 29, 1999.

[¶ 14] The Bureau denied Lesmeister's reapplication for disability benefits for her 1983 work injury, and she requested a formal hearing. Lesmeister had also filed a claim for her September 1, 1999 work injury. The Bureau accepted liability and paid medical benefits for that claim, but did not pay her disability benefits because she did not miss work for five consecutive days. *See* N.D.C.C. § 65–05–08. Lesmeister subsequently requested disability benefits for her 1999 work injury. The Bureau denied Lesmeister disability benefits for that injury, and she requested a formal hearing.

[¶ 15] After a formal hearing, an ALJ recommended denying Lesmeister disability benefits on her reapplication for the 1983 work injury and on her application for the 1999 work injury. The ALJ recommended finding Lesmeister was able to perform her job duties up to the time she was terminated from her employment on November 29, 1999; she was terminated for reasons unrelated to her compensable work injury; she had not suffered a significant change in her compensable medical

condition after her disability benefits were terminated in June 1999; and any wage loss sustained by Lesmeister was unrelated to any significant change in her compensable medical condition. The ALJ rejected Dr. Moore's opinion that Lesmeister had a significant worsening in her back condition in November 1999, concluding his opinion was contrary to evidence Lesmeister was able to do her job until she was terminated, to Dr. Craig's November 19, 1999 note that Lesmeister's condition was "about the same" to medical reports that she had experienced "knife-like pain" in her back since December 1998, and to Dr. Piatt's December 21, 1999 note that Lesmeister was "not having any significant amount of pain" and "appears to be doing pretty well." The ALJ also found Lesmeister was terminated for misconduct, and even if there had been a significant change in her compensable medical condition, she had failed to prove she sustained an actual wage loss caused by the significant change in her compensable medical condition.

[¶ 16] The Bureau modified the ALJ's recommendation and denied Lesmeister disability benefits on her reapplication for the 1983 work injury and on her application for the 1999 work injury. The Bureau found Lesmeister was able to perform her job duties up to the time she was terminated from her employment on November 29, 1999; she was terminated from her employment for reasons unrelated to the compensable injury to her back or her right ankle; she failed to show she suffered a significant worsening of her back condition after June 1999, or she missed five consecutive days of work for her right ankle; any wage loss sustained by Lesmeister was unrelated to any alleged significant worsening of her back condition; and she had no wage loss related to her right ankle injury. The Bureau adopted the ALJ's rejection of Dr. Moore's opinion that Les-

meister had a significant worsening of her back condition after November 1999, concluding Dr. Moore's opinion was contrary to evidence Lesmeister was able to do her work up to the time of her termination and contrary to other evidence that her back condition was about the same in November 1999. The Bureau adopted the ALJ's finding that Lesmeister was not terminated for her compensable medical condition, but rather for misconduct. The Bureau also found Lesmeister's September 1, 1999 work injury did not preclude her from working after November 29, 1999, and denied her application for disability benefits for that injury.

[¶ 17] The district court reversed the Bureau's order. The court concluded the Bureau's rejection of Dr. Moore's opinion was not erroneous, but the remainder of the medical evidence did not support the Bureau's decision that Lesmeister had not sustained a significant change in her compensable medical condition. The court also concluded the Bureau's finding Lesmeister was terminated for reasons related to the alleged abuse incident was not supported by the record, and a "complete review of the record shows Lesmeister was unable to perform her job due to her physical condition, and the Bureau's findings and conclusions that Lesmeister's wage loss was unrelated to her worsening condition are not supported by the evidence." The court directed the Bureau to enter an order finding Lesmeister disabled since November 29, 1999, and remanded to the Bureau to award disability benefits consistent with that order. The Bureau appealed.

## II

[¶ 18] Under N.D.C.C. § 28-32-46, a district court must affirm an administrative agency order unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

Under N.D.C.C. § 28–32–49, this Court reviews the district court judgment in the same manner. *See Grand Forks Prof'l Baseball, Inc. v. North Dakota Workers Comp. Bureau,* 2002 ND 204, ¶ 8, 654 N.W.2d 426.

▮▮▮ [¶ 19] We affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, or its conclusions are not supported by its findings. *Ollom v. North Dakota Workers Comp. Bureau,* 529 N.W.2d 876, 878 (N.D.1995). In evaluating the Bureau's findings of fact, we do not make independent findings or substitute our judgment for that of the Bureau; rather we determine only whether a reasoning mind reasonably could have determined the factual conclusions reached were proved by the weight of the evidence from the entire record. *Meljie v. North Dakota Workers Comp. Bureau,* 2002 ND 174, ¶ 3, 653 N.W.2d 62.

▮▮▮ [¶ 20] The adversarial concept has only limited application to claims for workers compensation benefits, and the Bureau must consider the entire medical record and adequately explain its reason for disregarding medical evidence favorable to the claimant. *See Negaard–Cooley v. North Dakota Workers Comp. Bureau,* 2000 ND 122, ¶ 18, 611 N.W.2d 898; *Flink v. North Dakota Workers Comp. Bureau,* 1998 ND 11, ¶ 12, 574 N.W.2d 784; *Kopp v. North Dakota Workers Comp. Bureau,* 462 N.W.2d 132, 135 (N.D.1990). *See also* N.D.C.C. § 28–32–46(7) (agency's findings must sufficiently address appellant's evidence). In *Kopp,* at 135 (citations omitted), we explained:

Although the ultimate resolution of conflicting medical testimony falls with the agency, this Court has required the Bureau to clarify discrepancies among inconsistent medical reports. Initially, we limited the requirement of adequate clarification of discrepancies in medical testimony to situations involving internal conflicts in the attending physician's report. Later, we expanded the requirement to include situations involving two reports by the same physician which contained conflicting opinions. Finally, in 1985, this Court remanded a decision to clarify discrepancies between two different physicians. Although we are continuing to shape the principles which govern the Bureau's treatment of inconsistent medical evidence, we must continually bear in mind the basic rule first articulated by Justice Sand: 'Normally, it is within the province of the administrative agency, not the courts, to weigh conflicting medical opinions and to resolve these conflicts.'

## III

[¶ 21] The Bureau argues the district court erred in weighing conflicting medical opinions and substituting its judgment for that of the Bureau. The Bureau argues a preponderance of evidence supports the Bureau's findings Lesmeister did not experience a significant worsening of her back injury and Lesmeister did not sustain an actual wage loss as a result of any significant worsening in her back condition. Lesmeister responds the Bureau's decision is not in accordance with the law, the Bureau's findings do not sufficiently address the evidence presented by her, and the Bureau's findings are not supported by a preponderance of the evidence. She argues, regardless of the stated reason for her termination, the only medical evidence in this record is that her condition significantly worsened in 1999, which caused her to be physically unable to perform even her modified LPN position and resulted in an actual wage loss. She argues the Bureau improperly rejected medical evidence under the guise of weighing the evidence and failed to sufficiently address her evidence.

## A

[¶ 22] Under N.D.C.C. § 65–01–11, a claimant must establish by a preponderance of the evidence the right to receive benefits from the workers compensation fund. When a claimant's disability benefits have been terminated, the claimant may reapply to begin payment again under N.D.C.C. § 65–05–08(1), which governs reapplications for benefits and provides:

> When disability benefits are discontinued, the bureau may not begin payment again unless the injured employee files a reapplication for disability benefits on a form supplied by the bureau. In case of reapplication, the award may commence no more than thirty days before the date of reapplication. Disability benefits must be reinstated upon proof by the injured employee that:
>
> a. The employee has sustained a significant change in the compensable medical condition;
>
> b. The employee has sustained an actual wage loss caused by the significant change in the compensable medical condition; and
>
> c. The employee has not retired or voluntarily withdrawn from the job market as defined in section 65–05–09.3.

As relevant to this case, claimants reapplying for disability benefits under N.D.C.C. § 65–05–08(1) must show both a significant change in their compensable medical condition and an actual wage loss caused by the significant change in their compensable medical condition. *See Gronfur v. North Dakota Workers Comp. Fund,* 2003 ND 42, ¶¶ 6, 11, 658 N.W.2d 337; *Baier v. North Dakota Workers Comp. Bureau,* 2000 ND 78, ¶¶ 11–12, 609 N.W.2d 722. In *Gronfur,* at ¶¶ 11–12, a majority of this Court held that, in order to show actual wage loss, claimants must show they were earning wages from employment when the significant change in compensable medical condition occurred and the change in medical condition caused at least a partial loss of those wages.

[¶ 23] Here, the Bureau adopted the ALJ's recommendation that even if Lesmeister had proven a significant change in her compensable medical condition, that change did not cause her to lose wages because she was not terminated for her medical condition, but rather for misconduct, and the greater weight of evidence showed she was able to do her job up to the date she was terminated. Tim Hager, the administrator at Good Shepherd, testified he did not explicitly termi-

nate Lesmeister for the slapping incident, but it was "definitely a trigger" to her termination, and she was terminated "without cause" because:

> There were two reasons. One of them is, if you're going to terminate with cause, you better have everything all documented so that you have exact quotes from people and all those types of things. The second reason is, is especially with the trigger being that abuse investigation and the fact than, even though it couldn't be proved, I had some real strong concerns about it. I didn't want that on her record for finding a job again, and I'm not required to terminate for cause, and so I'm not required to put it on her record. And as I indicated that said we would not be keeping that investigation with her personnel file. So that allows her to have a fairly clear record for going on to other employment.

[¶ 24] On this record, we need not decide whether Lesmeister sustained a significant change in her compensable medical condition, because even if she did sustain a significant change, we conclude a reasoning mind could reasonably conclude, as the Bureau did, that Lesmeister was terminated for misconduct and that she therefore did not sustain an actual wage loss caused by a significant change in her compensable medical condition. We conclude the Bureau's findings provide an adequate explanation for its decision. Because the Bureau found Lesmeister did not sustain an actual wage loss caused by any significant change in her compensable medical condition, we conclude the Bureau did not err in denying Lesmeister's reapplication for disability benefits for her 1983 work injury.

### B

[¶ 25] The Bureau argues it properly denied Lesmeister's application for disability benefits for her September 1, 1999 work injury. Lesmeister did not initially receive disability benefits for her September 1, 1999 work injury because she was not off work for five consecutive days, see N.D.C.C. § 65–05–08 ("No benefits may be paid for disability, the duration of which is less than five consecutive calendar days"), and she subsequently applied for disability benefits for that work injury.

[¶ 26] Disability means a loss of earnings capacity and may be permanent total, temporary total, or partial. N.D.C.C. § 65–01–02(15). In *Saakian v. North Dakota Workers Comp. Bureau*, 1998 ND 227 ¶ 23, 587 N.W.2d 166 (citations omitted), we said

> A "total disability" exists when a worker is unable, solely because of a job-related injury, to perform or obtain any substantial amount of labor in that particular line of work, or in any other for which the worker would be fitted. A worker who is medically able to return to work is not totally disabled. To establish a "partial disability," there should be a physical disability, the employee should be able to work subject to the disability, and there should be an actual loss of earning capacity that is causally related to the disability.

[¶ 27] Here, Dr. Craig initially treated Lesmeister for her September 1, 1999 work injury. He reported a "muscular ligamentous strain to the right ankle with secondary pain to the right calf and right thigh and exacerbation of pain to the lower back," and took her off work. On September 14, 1999, Dr. Piatt diagnosed Lesmeister with "a little sprain of the ankle." According to Dr. Craig's September 15, 1999 note, Lesmeister's ankle was then "significantly better and essentially turned back to its normal condition," and he returned her to work. In October 1999, Dr. Piatt suggested a referral to a physician at

the University of Minnesota. On December 21, 1999, Dr. Piatt noted Lesmeister was "actually doing pretty well ... [s]he is not having any significant amount of pain" and she appeared to be doing pretty well. In January 2000, Lesmeister was seen at the University of Minnesota by Dr. Thomas Wise and Dr. Chris Coetzee. They concluded Lesmeister had right ankle pain which was a residual symptom from her ankle sprain, not an exacerbation of her tendinitis, and they recommended no restrictions in regard to her ankle.

[¶ 28] There was evidence that Lesmeister was able to work despite her September 1, 1999 work injury. We do not reweigh the medical evidence about Lesmeister's 1999 work injury. Rather, we conclude a reasoning mind could reasonably conclude, as the Bureau did, that Lesmeister was not entitled to disability benefits as a result of her 1999 work injury. We therefore conclude the Bureau did not err in denying Lesmeister's application for disability benefits for her 1999 work injury.

C

[¶ 29] Lesmeister argues even if she was terminated for misconduct, her disability benefits should be reinstated under *Wendt v. North Dakota Workers Comp. Bureau*, 467 N.W.2d 720 (N.D.1991), once her work-related condition disables her from working.

[¶ 30] In *Wendt*, 467 N.W.2d at 728 (citations omitted), this Court said:

Although it has been stated rather broadly in some decisions that "an employee who is discharged for just cause is not entitled to workers' compensation benefits," we agree with those courts which hold that a discharge for just cause does not automatically bar an employee from receiving disability benefits.

We adopt the approach set forth by the Minnesota Supreme Court:

"[A] justifiable discharge for misconduct suspends an injured employee's right to wage loss benefits; but the suspension of entitlement to wage loss benefits will be lifted once it has become demonstrable that the employee's work-related disability is the cause of the employee's inability to find or hold new employment. Such a determination should be made upon consideration of the totality of the circumstances including the usual work search 'requirements.'"

In this case, Wendt does not dispute that he was discharged by Steiger for just cause and does not claim that the discharge was in any way related to his back injury.

. . . .

We conclude that the Bureau could reasonably find that Wendt's loss of earning capacity was causally related to his discharge for cause rather than from his disability. Wendt may reapply for disability benefits any time in the future when he can demonstrate a causal connection between his disability and a loss in earning capacity.

[¶ 31] However, *Wendt* was decided before N.D.C.C. § 65–05–08(1), was amended in 1991 N.D. Sess. Laws, ch. 714, § 43 and 1997 N.D. Sess. Laws ch. 542, § 1, to require reapplicants for disability benefits to show an actual wage loss caused by the significant change in the compensable medical condition. *See Gronfur*, 2003 ND 42, ¶ 14, 658 N.W.2d 337. The Bureau found Lesmeister was not entitled to disability benefits on her reapplication for her 1983 work injury and on her application for her 1999 work injury, and under the requisite deferential standard of review, we have sustained those findings. However, Lesmeister is not precluded

from reapplying for disability benefits for her 1983 work injury any time in the future when she can satisfy the requirements of N.D.C.C. § 65–05–08(1). *See Wendt,* 467 N.W.2d at 728. *See also Lass v. North Dakota Workmen's Comp. Bureau,* 415 N.W.2d 796, 800–01 (N.D.1987).

## IV

[¶ 32] We reverse the district court judgment and remand for entry of judgment affirming the Bureau decision.

[¶ 33] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

MARING, Justice, dissenting in part and concurring in part.

[¶ 34] I concur in part II B and respectfully dissent from the remainder of the majority opinion.

[¶ 35] In *Wendt v. North Dakota Workers Comp. Bureau,* 467 N.W.2d 720, 728 (N.D.1991) (citations omitted), we held: "we agree with those courts which hold that a discharge for just cause does not automatically bar an employee from receiving disability benefits." We further held:

> "[A] justifiable discharge for misconduct suspends an injured employee's right to wage loss benefits; but the suspension of entitlement to wage loss benefits will be lifted once it has become demonstrable that the employee's work-related disability is the cause of the employee's inability to find or hold new employment. Such a determination should be made upon consideration of the totality of the circumstances including the usual work search 'requirements.' "

*Id.* (citation omitted). In *Wendt,* we adopted this approach and rejected the approach of other jurisdictions that an employee who has been terminated for just cause is not entitled to any workers compensation benefits. *Id.* at 728. We noted that Professor Larson, in his treatise, discusses the inappropriateness of total forfeiture of all compensation rights where the claimant, through his own fault, lost his job for which he was concededly fitted, but his present inability to get a job is solely because of his work-related physical impairment. *Id.* at 727–28 (quoting 2 Larson, The Law of Workmen's Compensation § 57.64(a), at pp. 10–264 through 10–269 (1989)). Therefore, the Bureau's finding that because Lesmeister was terminated from her employment for just cause she cannot receive disability benefits does not necessarily follow. Also, termination for cause does not conclusively establish that she was medically able to perform the duties of her employment at the Good Shepherd nursing home or generally as an LPN.

[¶ 36] The issue in this case with regard to her back injury is whether Lesmeister is entitled to permanent total or partial disability benefits under N.D.C.C. § 65–05–09 or N.D.C.C. § 65–05–10. Generally, we have set forth three factors for determining whether an individual is entitled to partial disability benefits:

> First, there should be a physical disability; second, the disability should be partial, or in other words, the employee should be able to work subject to the disability; and third, there should be an actual loss of earning capacity that is causally related to the disability.

*Wendt,* at 727 (quoting *Jimison v. North Dakota Workmen's Comp. Bureau,* 331 N.W.2d 822, 827 n. 5 (N.D.1983)). For total disability benefits, an employee must establish he is "unable, solely because of a job-related injury, to perform or obtain any substantial amount of labor in that

particular line of work, or in any other for which the worker would be fitted." *Saakian v. North Dakota Workers Comp. Bureau*, 1998 ND 227, ¶ 23, 587 N.W.2d 166.

[¶ 37] Because this is a reapplication for benefits, under N.D.C.C. § 65–05–01, Lesmeister must first establish a significant change in her compensable back injury.

[¶ 38] After a thorough review of the medical evidence and history in this record, I am of the opinion a reasoning mind could not reasonably conclude Lesmeister did not suffer a significant worsening of her back condition. In fact, there is no evidence to the contrary. Lesmeister originally injured her back in 1983. Thereafter, she received a great deal of medical treatment and was at times partially disabled and totally disabled. She underwent a laminectomy at L4–L5 and a fusion at L5–S1 in February 1996. She returned to work in the summer of 1996, but her condition worsened in March 1999. She completed a three-week chronic pain management program March 26, 1999. On March 23, 2000, Dr. Moore told the Bureau that Lesmeister was unemployable in her current occupation and on April 3, 2001, he stated that in his opinion:

1. At this point in time, I feel that Bev has a chronic back pain syndrome secondary to her disk disease as well as the radiculopathy and given the length of time since her initial injury in 1983 and the reinjury in September of 1999, I do not feel that Bev is likely to have any additional improvement. She has been extremely faithful in doing her back exercises, taking her medication, and keeping her appointments for therapy and chronic pain management and, despite all of this, there has not ever been any significant improvement in her symptoms.

2. Her chronic back and ankle problem have definitely limited her ability to walk or stand in an eight-hour day. I think it would be totally unrealistic to expect that Mrs. Lesmeister would be able to walk or stand for even as little as two to four hours in an eight-hour work day.

3. Mrs. Lesmeister's condition definitely affects her ability to do any lifting, pushing, pulling, or carrying because of the reactivation of her symptoms. I would think that a weight of less than ten pounds would be the limit.

4. I feel Mrs. Lesmeister's condition and symptoms would prevent her from sitting beyond four hours in an eight-hour work day.

5. Any bending, squatting, or crawling, I would definitely expect, would aggravate her symptoms.

6. I feel that Mrs. Lesmeister's condition limits her ability to use both upper and lower extremities to reach, push, or pull to any significant degree and anything greater than ten pounds in weight.

7. Mrs. Lesmeister definitely has chronic pain and I have never felt that she has been dishonest or deceitful in relating her symptoms and limitations they have placed on her. Definitely at times when her symptoms are worse her muscle spasm and limitation of range of motion is limited. The level of her pain definitely limits her ability to perform substantial gainful employment. I do not feel that she would be able to perform anything beyond sedentary work on a limited basis because of the amount of time she needs to spend in exercising, bending, and stretching to prevent her symptoms from worsening. I do not feel that she fits into the light work category.

8. Mrs. Lesmeister definitely suffers from depression which I feel is primarily

related to the limitations her back problem has placed on her career and her ability to work in a vocation which she loves dearly. Certainly the depression may have some affect on her ability to be gainfully employed, but I do not think she would be experiencing the depression if she did not have the chronic back and ankle problems.

9. I definitely do not feel that Mrs. Lesmeister is capable of working in the light level of exertion. I base this on the fact that her condition in almost a year and a half has not improved despite all of the efforts put forth by her in exercising good back care and following through with her medical appointments.

10. I have always gotten the impression that if there were any way possible that Bev would be able to return to work and be gainfully employed without adversely affecting her health and worsening her back condition she would love to do that but, unfortunately, at this point I do not feel that this is realistic. I would, therefore, strongly support her claim for social security disability benefits.

Dr. Craig saw Lesmeister after an additional work injury on September 1, 1999. Dr. Craig took her off work because of her ankle injury *and* the exacerbation of her back injury. She was returned to work on September 15, 1999. On October 19, 1999, she tripped on some electrical cords which flared up her back pain. She saw Dr. Turner for "knife-like pain" and severe discomfort in her left lower extremity right leg pain and an inability to sleep. Her pain forced her to Dr. Craig on November 10, 1999, with complaints of severe back and ankle pain and an inability to sleep due to pain. Dr. Craig diagnosed her with a back injury exacerbated on 10–18–99 and noted it was unresponsive to outpatient therapy. Dr. Craig placed Lesmeister in the hospital. She was dis-

charged on November 11, 1999, because the Bureau would not agree to pay for inpatient therapy. On November 19, 1999, she returned to Dr. Craig still complaining about pain. She said it was "about the same," but it is obvious she is referring to the pain that she had back on November 10–11, 1999. On November 23, 1999, Dr. Turner, her primary back physician, saw Lesmeister for her back pain and inability to sleep. Dr. Turner had provided work reductions for Lesmeister on June 1, 1999, which included "sed-light/light [lifting restrictions,] release[d] [to the] night shift [with a] max[imum] 3 nights in a row[,] off 1–2 nights, max[imum] 3 night [shifts] consecutive." In December 1999, Dr. Turner advised Lesmeister to apply for Social Security disability benefits. In order to be successful in obtaining Social Security disability benefits, an applicant must establish an "inability to engage in any substantial gainful activity . . . ." 42 U.S.C. § 423(d)(1)(A). The Bureau totally ignored Dr. Turner's notes and opinions without explanation. Section 28–32–46(7), N.D.C.C., requires the Bureau to address the evidence favorable to the employee. Although the Bureau discredits Dr. Moore's opinion, it cannot ignore Dr. Turner's notes and opinions.

[¶ 39] However, even if Lesmeister suffered a significant worsening of her back injury, the Bureau states Lesmeister did not establish "actual wage loss" because she was terminated for cause. The medical evidence, however, indicates she can no longer perform work as an LPN. Having established she is totally disabled from performing her former employment due to physical restrictions caused by her back injury, Lesmeister is entitled to disability benefits. On December 21, 1999, when Dr. Turner advised her to seek Social Security disability benefits, he was of the opinion she no longer could perform her work as an LPN or for that matter any other em-

ployment for which she may be qualified by training and transferable skills. I continue to adhere to my dissent in *Gronfur v. North Dakota Workers Comp. Fund*, 2003 ND 42, ¶ 17–20, 658 N.W.2d 337 (Maring, J., dissenting), wherein I state that it is only logical "actual wage loss" can be proven by an inability to gain employment, which in turn can be proven by medical evidence that the employee sustained a physical impairment from a compensable work injury resulting in total disability from work.

[¶ 40] In this case, it is the Bureau's position that an employee, whose compensable medical condition worsens to the point that working is not advised and who coincidentally is fired, cannot be entitled to workers compensation disability benefits. In other words, the employee must have the doctor's opinion the medical condition has worsened and has totally disabled him from his work before he is fired. I am of the opinion this is contrary to our decision in *Wendt*.

[¶ 41] I would affirm the decision of the district court.

[¶ 42] MARY MUEHLEN MARING